[No. B053778. Second Dist., Div. Seven. Aug. 18, 1994.]

WALLACE A. GOODSTEIN, Plaintiff and Appellant, v.
BANK OF SAN PEDRO, Defendant and Respondent.

900

902

**COUNSEL**

John Clifton Elstead for Plaintiff and Appellant.

Epport & Richman and Steven N. Richman for Defendant and Respondent.

## OPINION

**LILLIE, P. J.**—Plaintiff Goodstein appeals from a September 11, 1990, order granting defendant's motion to recover expert witness fees, awarding fees and costs of $138,421, and denying plaintiff's motion to tax costs. On appeal, plaintiff challenges the trial court's award of expert witness fees under Code of Civil Procedure section 998 and the cost award on several grounds.

### FACTUAL AND PROCEDURAL BACKGROUND

After a judgment of nonsuit was granted in favor of defendant (Bank) on Goodstein's complaint for slander of title and negligence,[1] Bank filed a memorandum of costs in conjunction with a motion to recover expert witness fees totaling about $116,000, based on Goodstein's rejection of Bank's written statutory offer to compromise and his failure to obtain a judgment more favorable than the offer (Code Civ. Proc., § 998, subd. (c)).[2]

According to declarations submitted in support of Bank's motion, Goodstein claimed numerous items of damages exceeding $2 million in his suit against Bank, including damages for loss of business investment in Jook Box Corporation, of which Goodstein was the sole shareholder. Prior to trial, Bank designated numerous expert witnesses, including Robert Wagman and James Call who were deposed in early 1989, before trial in September and October 1989; Wagman was a partner of Price Waterhouse with over 12 years of experience in financial services and tax issues; his trial testimony would relate to the financial status of Goodstein and his ability to obtain capital for the operation of Jook Box Corporation; Call was a senior manager at Price Waterhouse; his trial testimony would relate to the management and operation of Jook Box Corporation and the reasons for its failure.

Wagman rendered 103 hours of service for Bank in connection with the lawsuit, including initial investigation and research, preparation for deposition, and trial preparation, but excluding the time spent in deposition; his

---

[1]We upheld this judgment in an unpublished opinion in *Goodstein* v. *Bank of San Pedro* (Dec. 10, 1993) B048044, review denied March 23, 1994.

[2]Code of Civil Procedure section 998 provides in pertinent part: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] . . . [¶] (c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his or her costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant."

fees were $15,077, equating to an average hourly rate of about $146; about $12,500 of his fees were incurred after the December 1988 statutory offer to compromise.

Call rendered 481 hours of service in connection with the lawsuit, excluding time spent in deposition; Price Waterhouse charged Bank $69,725 for his services, plus costs of $5,696, equating to an average hourly rate of $135; about $69,300 of the fees were incurred after the statutory offer to compromise.[3]

Goodstein filed opposition to Bank's motion for expert witness fees and a motion to tax costs, challenging items of costs sought by Bank by virtue of its status as a prevailing party under Code of Civil Procedure section 1032, as well as items of costs sought by virtue of Code of Civil Procedure section 998, subdivision (c).

After oral argument on the motions, the court took the matters under submission. On September 11, 1990, the court issued its ruling on submitted matter, which stated in pertinent part: "The Motion of defendant [Bank] to recover expert witness fees in the sum of $116,184.05, as claimed in the Memorandum of Costs filed November 15, 1989, is granted ([Code Civ. Proc.] § 998(c)). Defendant Bank has carried its burden to establish that the foregoing sum is reasonable, actually incurred, and reasonably necessary in the preparation for trial of the case at bench. [¶] . . . Costs, over and above the foregoing expert witness fees, and which costs are in the sum of $22,237.62 . . . are granted . . . under the provisions of [Code Civ. Proc.] §§ 998(c), 1032, and 1033.5 . . . . [¶] . . . Plaintiff's Motion to Tax the foregoing costs is denied." Plaintiff filed timely notice of appeal from the order.

I

STATUTORY OFFER UNDER SECTION 998

Appellant claims that certain aspects of the statutory offer to compromise prevent it from constituting an offer to compromise within the provisions of Code of Civil Procedure section 998, subdivision (b).[4] He argues that "The Bank's requirement of a dismissal with prejudice invalidated its offer as a section 998 offer and, consequently, the trial court's order

---

[3]Bank also claimed lesser amounts of expert witness fees for 10 other experts, whose fees are not specifically mentioned in Goodstein's briefs on appeal. It is not necessary to set out the details of these other fees to resolve the issues on this appeal. We do note that Bank's motion contained detailed information about the background and anticipated testimony of the expert witnesses, and an itemization of their fees.

[4]Code of Civil Procedure section 998, subdivision (b), provides in pertinent part: "Not less than 10 days prior to commencement of trial, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and

granting the Bank's motion for expert witness fees and denying Dr. Goodstein's motion to tax costs was erroneous as a matter of law."

In this case, the offer was captioned "Statutory Offer to Compromise," and provided in pertinent part that: "In full settlement of this action, [Bank] hereby offers to pay [Goodstein] the total sum of $150,000 in exchange for each of the following: [¶] 1. The entry of a Request for Dismissal with prejudice on behalf of the Plaintiff in favor of [Bank]; [¶] 2. The execution and transmittal of a General Release by [Goodstein] in favor of [Bank]; [¶] 3. Each party is to bear their own respective costs and attorney's fees."

Appellant contends that the foregoing offer does not fall within Code of Civil Procedure section 998 because it fails "to allow judgment to be taken" against Bank. Appellant maintains that a dismissal with prejudice operates as a final judgment on the merits while a judgment obtained pursuant to section 998 is deemed to be a "compromise settlement" under section 998, subdivision (f), so that "the Bank created a situation where it would have been impossible for the terms of its offer to become operative" under section 998, subdivision (b), which requires that "the clerk or the judge shall enter judgment accordingly."

The distinctions set up by appellant are not tenable, and he offers no authority to support his argument, which is premised on the claim that a compromise settlement under Code of Civil Procedure section 998 can never include an agreement for a voluntary dismissal or release. Had Goodstein accepted the offer in this case, and had Bank performed pursuant to the terms of the offer, there would have been no impediment to Goodstein's execution of a request for dismissal and the clerk's entry of it. Such a procedure would have resulted in a "judgment . . . taken in accordance with the terms and conditions stated at that time" in the offer. We perceive no impediment to that dismissal being part of the compromise settlement and "judgment" within the meaning of section 998.

"Judgment" is defined in Code of Civil Procedure section 577 as "the final determination of the rights of the parties in an action or proceeding." ■ " '[A] valid compromise agreement has many attributes of a judgment, and in the absence of a showing of fraud or undue influence is decisive of the rights of the parties thereto and operates as a bar to the reopening of the

conditions stated at that time. [¶] (1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. [¶] (2) If the offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial."

Subdivision (f) of section 998 provides in part that "Any judgment entered pursuant to this section shall be deemed to be a compromise settlement."

original controversy.' " (*Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 677 [186 Cal.Rptr. 589, 652 P.2d 437].)

■ "However, until a party seeks to enforce a compromise agreement and to have judgment entered thereon, the underlying lawsuit has not finally been disposed of although the parties may in fact be bound by a valid and enforceable settlement contract." (*Varwig* v. *Leider* (1985) 171 Cal.App.3d 312, 315 [217 Cal.Rptr. 208].) Because compromise agreements "are contracts and are governed by the general principles of contract law" (*id.* at p. 316), the court in *Varwig* stated that even though the underlying lawsuit giving rise to a settlement agreement is dismissed for failure to bring the action to trial in five years, "The parties will retain their right to seek to specifically enforce their settlement contract even if the underlying lawsuit is dismissed" (*ibid.*), and "A dismissal . . . will not . . . adversely affect the agreement between the parties." (*Ibid.*)

■ The word "judgment" in Code of Civil Procedure section 998 indicates that the statute contemplates that an offer to compromise which is accepted will result in the final disposition of the underlying lawsuit; the statute does not indicate any intent to limit the terms of the compromise settlement or the type of final disposition. The acceptance of the instant compromise agreement calling for a voluntary dismissal with prejudice would have finally disposed of the complaint as effectively (see Code Civ. Proc., § 581d) as one calling for entry of judgment in favor of plaintiff.

In light of the foregoing, we conclude that the instant offer to compromise meets the requirements of subdivision (b) of Code of Civil Procedure section 998. Our conclusion is consistent with *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213 [142 Cal.Rptr. 563], although that case did not involve a section 998 offer.

In *Gregory*, plaintiff accepted a settlement offer for $7,500 during a settlement conference in the judge's chambers and then refused to sign a release and repudiated the settlement; on motion, the trial court granted defendant's motion for an order compelling enforcement of compromise settlement agreement and judgment thereon for $7,500; plaintiff appealed and complained on appeal that "the court was without power to enter a judgment in her favor, since the compromise agreement contemplated no such thing, but rather payment by respondent and dismissal of the action by appellant. However, it is recognized that a compromise agreement operates as a merger and bar of all preexisting claims and causes of action [citation] and is as binding and effective as a final judgment itself [citation]. Thus, entry of judgment in favor of appellant in conformance with the compromise

is not improper, and indeed has been sanctioned in the past. [Citation.]" (77 Cal.App.3d at p. 221.)

We interpret *Gregory* to stand for the proposition that, as between the parties thereto and for purposes of enforcement of settlement agreements, a compromise agreement contemplating payment by defendant and dismissal of the action by plaintiff is the legal equivalent of a judgment in plaintiff's favor.

Appellant points out that the distinction between a judgment and a voluntary dismissal may have an impact on a party's status as a prevailing party under the provisions of Civil Code section 1717, but this issue is not implicated here. Cases dealing with attorney fees under Civil Code section 1717 do not provide authority for appellant's restrictive interpretation of Code of Civil Procedure section 998.

We also reject appellant's argument that the offer is fatally uncertain because it fails to specify whether it was an offer intended to compromise all three of the actions consolidated for trial, or just Goodstein's action against the Bank. The trial court impliedly determined that the offer was clear and unambiguous and was intended to settle only Goodstein's complaint against Bank. Substantial evidence in the record supports the trial court's determination.

█ "Compromise agreements are, of course, 'governed by the legal principles applicable to contracts generally.' [Citation.] They 'regulate and settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to matters which the parties never intended to include therein, although existing at the time.' " (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at p. 677.)

█ Citing the provision of the instant offer pertaining to Goodstein's execution of a general release, appellant contends that the foregoing provision required him to surrender "other present and future possible causes of action against the defendant," thus rendering the offer "hopelessly uncertain and directly under the purview of *Valentino* [v. *Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692 (247 Cal.Rptr. 483)]." Appellant argues that his other potential causes of action against the Bank "include abuse of process and malicious prosecution, neither one of which [he] was willing to surrender at the time of the Bank's offer." The clear and unambiguous language of the offer provides that the terms and conditions applied only "in full settlement of this action." Accordingly, the offer reasonably cannot be construed to apply to other litigation contemplated by Goodstein.

The instant case is distinguishable from *Valentino* v. *Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692 [247 Cal.Rptr. 483], a personal injury case in which defense counsel included with a $15,000 offer a requirement that plaintiff sign and file a notice of acceptance which "not only terminated the instant personal injury action against Sav-On but also released Sav-On, its attorneys and insurance carrier from any and all claims and causes of action arising out of appellant's claims including insurance bad faith and violation of Insurance Code section 790.03." (201 Cal.App.3d at p. 695.) As stated by the court in *Valentino*, "It would be hard enough for a trial court to place a value on a condition requiring the plaintiff to dismiss a single specific lawsuit she had already filed against the defendant in another court. But when the condition mandates surrender of an array of potential lawsuits against not only the defendant but two other parties the task becomes impossible. Even if it were possible, it would not be worth the cost. Recalling the underlying purpose of section 998 is to promote judicial economy, this court is not about to encourage defendants to add conditions to their statutory offers which introduce so much uncertainty to those offers the courts must spend hours or days sorting them out to determine whether plaintiffs have achieved a more favorable result at trial." (*Id.* at pp. 700-701.)

Inasmuch as the general release in the instant case pertained only to the same action before the trial court which Bank sought to have dismissed upon its payment of $150,000 to Goodstein, *Valentino* has no application to the facts of this case.

■ We also reject appellant's claim that had he accepted the instant offer, calling for dismissal, such dismissal would have been tantamount to "a judgment on the merits in favor of defendant," and he would have incurred the risk "of having the defendant declared the prevailing party under [Code of Civil Procedure section] 1032 and [defendant] pursuing him for costs anyway." Goodstein is wrong: Had he accepted the offer, it would have been deemed a compromise settlement by operation of law; moreover, by its own terms, each side would have agreed to bear their own costs and attorney fees. Nothing in section 1032 prohibits parties from stipulating to alternative procedures for awarding costs in the litigation. (See Code Civ. Proc., § 1032, subd. (c).)

Without merit also is appellant's contention that "The Bank's offer was an invalid bad faith offer that had no reasonable prospect of acceptance." Bank's declarations establish without contradiction that at a voluntary settlement conference in December 1988, the judge reviewed the file, spoke with each party, independent of the other, and expressed his opinion that the case had a settlement value of $200,000. After the settlement conference, defense counsel decided to offer the figure of $150,000 to Goodstein, and such a statutory offer was served on Goodstein shortly thereafter.

Moreover, in light of the judgment of nonsuit, and the affirmance of that judgment on appeal, appellant's characterization of this case as one of "clear liability" is without merit. As stated in our opinion dealing with the appeal from the judgment of nonsuit, "Bank did not slander [Goodstein's] title by filing a forged deed of trust, . . . Dr. Goodstein's *partner* did these wrongful acts." We also affirmed the judgment on the ground that certain alleged wrongful conduct by Bank was determined to be privileged, other allegedly negligent conduct was not the proximate cause of damage to Goodstein, and Goodstein had no standing to sue for the lost profits involving the Jook Box Corporation and a derivative action was not pleaded. (*Goodstein* v. *Bank of San Pedro, supra,* B048044.) "Where, as here, the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable . . . ." (*Elrod* v. *Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 700 [241 Cal.Rptr. 108].)

Appellant implies that despite pleading defects and the lack of evidence of causation, Bank nevertheless took Goodstein's claims against it for millions of dollars seriously because its offer "barely exceeded its own costs" of about $138,000, and "it is unlikely that the Bank would have spent so much on the defense of the case and withheld a 998 offer until the eve of trial if it had not reasonably anticipated a significant verdict against it, greatly in excess of the $150,000 offered."

We find nothing in this record to indicate that Bank actually valued the case in excess of its statutory offer. According to the declaration of counsel monitoring the case on behalf of Bank's insurer, "It was decided that a Statutory Offer in the sum of $150,000 would be offered for the sole purpose of confirming the offer that had been made at the December 29, 1988 settlement conference and to give us the opportunity to collect any expert fees that were generated in this case." Thus, the offer is consistent with the fact that, despite its lack of merit, Goodstein's action would entail substantial costs and expenses if it went to trial.

Given all of the above circumstances, appellant fails to establish that the trial court abused its discretion in impliedly determining that the statutory offer in this case was made in good faith. Accordingly, we reject appellant's contentions that the offer in this case does not fall within the provisions of Code of Civil Procedure section 998.

## II

### EXPERT WITNESS FEES

Appellant contends that the Bank was not entitled to expert witness fees within the provisions of Code of Civil Procedure section 998, subdivi-

sion (h), and Government Code section 68092.5, subdivision (a), "because its experts were merely consultants and not potential expert witnesses at trial." This is a factual argument which is not borne out by our record, which contains declarations establishing that Bank designated its experts before trial and intended to call each of them "to testify either in Bank's defense-in-chief or in rebuttal to Plaintiff's claims or his expert witnesses." Substantial evidence thus supports the trial court's implied findings that Bank's experts were potential expert witnesses at trial and not merely consultants. No factual basis supports appellant's claims that the experts were percipient witnesses. In addition, appellant's claim that the services of experts Call and Wagman were duplicative is not supported by the record, which contains substantial evidence that they were hired to investigate and testify as to different issues in the case.

## III

### COSTS

■ In addition to expert witness fees, the trial court awarded costs totaling $22,237.62 for filing and motion fees, deposition costs, service of process, witness fees, and court-ordered transcripts. Appellant contends that "The Bank was not entitled to more than $7,853.08 of its costs because all of the other costs were incurred before its offer was made."

Appellant argues that the trial court abused its discretion in awarding costs incurred *before* the statutory offer was made because the trial court "made no determination as to when the complaint in any of the three consolidated actions was filed, let alone which of the costs claimed pertained to which of these actions. It simply ordered that all costs claimed by the Bank were to be paid by the plaintiff, which could mean costs for two of the cases that have not even been dismissed, as well as costs incurred before any of the complaints were filed."

This argument is simply absurd. We should not have to point out to appellant's counsel that Bank's memorandum of costs contained detailed schedules containing itemized lists of deposition dates, costs, and deponents, investigative costs, lists of dates and fees for service of process on named persons, and an itemized list of expert witness fees. Bank's motion contained detailed declarations further explaining and justifying the expert witness fee expenses. Bank's declarations were not contradicted by any declarations submitted by Goodstein. "If the items on a verified cost bill appear proper charges, they are prima facie evidence that the costs, expenses and services therein listed were necessarily incurred." (*Rappenecker* v. *Sea-Land Service,*

*Inc.* (1979) 93 Cal.App.3d 256, 266 [155 Cal.Rptr. 516].) Appellant's mere statements in his points and authorities and in his briefs on appeal are insufficient to rebut Bank's prima facie showing (*ibid.*), and we must presume the trial court's order to be correct inasmuch as appellant fails to affirmatively show any error. (*Ibid.*)

Appellant also fails to establish any abuse of discretion by the trial court in awarding Bank both preoffer and postoffer costs under the provisions of Code of Civil Procedure section 1032 or Code of Civil Procedure section 998, subdivision (c). (*Ante,* fn. 2.) Subdivision (b) of section 1032 provides that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." It was without dispute that Bank was the prevailing party within the meaning of section 1032. It is irrelevant under section 1032 whether costs were incurred before or after a section 998 offer.

### DISPOSITION

The order is affirmed. Respondent is entitled to its costs on appeal.

Woods (Fred), J., concurred.

**JOHNSON, J.**—I respectfully dissent.

My concerns about the majority opinion center on a single issue. Was the defendant's offer a *valid* Code of Civil Procedure Section 998 offer despite the fact it included a demand the plaintiff sign a "general release," not just a termination of this particular cause? I believe the answer is no, it was not. That is, I construe section 998 as limiting the terms of a statutory offer to the precise cause which will go to trial before the court if the offer is not accepted.

In my view, this very court actually decided this issue in a unanimous opinion six years ago. (*Valentino* v. *Elliot Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692 [247 Cal.Rptr. 483] review den. Aug. 18, 1988.) In that opinion, we characterized the issue as follows: "[W]e confront a fundamental issue in the interpretation of California's settlement incentive scheme. May costs be shifted against a prevailing party who rejected a statutory settlement offer (under Code Civ. Proc., § 998) that would have required this party to forego other lawsuits as well as dismissing the one involved in the case at trial?" (201 Cal.App.3d at p. 694.) That sounds nearly identical to the issue before us in this case, where a party rejected a settlement offer including a general release "that would have required it to forego other lawsuits as well as dismissing the one involved in the case at trial."

The majority opinion is correct in stating there are factual differences between *Valentino* and the instant case. But the *Valentino* rationale is broad enough to decide this case as well. Furthermore, principles of statutory construction and policy considerations underlying that rationale strongly support a rule against allowing Code of Civil Procedure section 998 offers to include a requirement the offeree sign a "general release."

In *Valentino*, the defendant made a Code of Civil Procedure section 998 offer of $15,000. In order to obtain this sum, however, plaintiff not only had to dismiss her current personal injury action but also release defendant, its attorneys and insurance carrier "from any and all claims and causes of action arising out of appellant's claims including insurance bad faith and violation of Insurance Code section 790.03." (201 Cal.App.3d at p. 695.) In its inclusion of a broad general release as part of the section 998 offer, *Valentino* is virtually identical to the instant case.

There was a somewhat different outcome at trial, however. In *Valentino*, the plaintiff received a judgment of $9,750 while the instant case ended in a defense verdict. Still, what the plaintiff won in *Valentino* fell short of the defendant's Code of Civil Procedure section 998 offer. Consequently, if that offer were considered valid, despite the inclusion of a general release, the defendant would have been entitled to the cost shifting allowed under section 998. Indeed the trial court awarded the defendant $13,244.40 in costs, leaving the plaintiff a net loser.

This court reversed in *Valentino* specifically because the defendant's Code of Civil Procedure section 998 offer incorporated a general release not just a settlement of the case before the court. "Other terms or conditions of a statutory offer may effectively negate the monetary term of the offer. . . . (T)he other terms and conditions may reduce the actual value of the monetary term so that a damage award in a lesser sum actually would be 'more favorable' not less favorable than the statutory offer the defendant made. . . ."

". . . Evaluated in the light of this (general release), the monetary term of the offer is not really $15,000 *to settle the causes of action at issue in the instant case*. Instead that $15,000 is diluted by the worth of other present and future possible causes of action (the plaintiff) must surrender in order to receive the defendant's cash. (Italics in original.) *Most or indeed all of the $15,000 actually may represent a payment to be released* from potential bad faith or other claims against the insurance company, the lawyer, or the (defendant) rather than a payment to settle the instant case. . . .

". . . In retrospect, of course, (plaintiff's) bad faith claim appears valueless and it is hard to conjure any other claims she could file . . . . But

the value of these claims must be measured as of the time (defendant) made its statutory offer and without benefit of hindsight.

"To pinpoint the value of the various potential unfiled claims [plaintiff] might have had at the time of the statutory offer or in the future . . . , would require the court to engage in wild speculation bordering on psychic prediction. Merely identifying all the potential claims would take some clairvoyance as well as the collection of a host of facts unrelated to the merits of the instant case. . . . After all the potential causes of action had been identified, the court would then have to gather further facts about the apparent probabilities of success and possible recoveries for each as they would have appeared at the time of the statutory offer. Then it would have had to arrive at estimates as to all these variables and calculate an estimated value for each individual potential claim, cumulate those estimated values, and determine whether the total exceeded [the difference between defendant's section 998 offer and plaintiff's recovery in the case on trial]. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"It would be hard enough for a trial court to place a value on a condition requiring the plaintiff to dismiss a single specific lawsuit she had already filed against the defendant in another court. But when the condition mandates surrender of an array of potential lawsuits . . . *the task becomes impossible*. Even if it were possible, it would *not be worth the cost*. Recalling the underlying purpose of section 998 is to promote judicial economy, this court is *not about to encourage defendants to add conditions to their statutory offers which introduce so much uncertainty* to those offers the courts must spend hours or days sorting them out to determine whether plaintiffs have achieved a more favorable result at trial." (201 Cal.App.3d at pp. 697-701, italics added.)

As the language quoted above demonstrates, this court in *Valentino* disapproved the inclusion of general releases in Code of Civil Procedure section 998 offers and gave several reasons for its position. While *some* of those reasons are more relevant when the plaintiff wins something in the specific case on trial, most of them apply even if that specific case results in a defense verdict. As our *Valentino* opinion highlighted, when the section 998 offer includes a general release we cannot be certain whether *any* of the monetary offer was addressed to the single case before the court. As we held in *Valentino*, ". . . indeed all of the [monetary offer] may represent a payment to be released from . . . other claims . . . rather than a payment to settle the instant case." (201 Cal.App.3d at p. 698.) Moreover, as further discussed in *Valentino*, the difficulties and costs of determining whether that

is true are present whether the trial of the single case before the court ends in a defense or plaintiff's verdict. If we allow section 998 offers to include general releases, judicial economy—a major goal of section 998—suffers in either instance.

In my view, then, the lesson of *Valentino* is that Code of Civil Procedure section 998 offers which include general releases—or require dismissal of causes other than the one before the court on this occasion—are invalid *from the inception.* Nor is their validity restored just because the trial happens to result in a defense verdict. The fatal vices identified in *Valentino* remain.

Still, *Valentino* only surfaced some of the problems inherent in Code of Civil Procedure section 998 offers which include general releases. There are others.

First, a general release clause in a Code of Civil Procedure section 998 offer places the offeree in an untenable position. It requires the offeree to risk section 998 cost-shifting *in this case* in order to preserve his rights to pursue other litigation against his opponent.

The opposing party could make a monetary offer that was quite reasonable for settlement *of this case,* but unreasonable as an offer to settle both this case and any other actual or potential litigation between the parties. If such an offer nevertheless is to be considered a valid Code of Civil Procedure section 998 offer, it places the offeree in a terribly unfair dilemma. If the offeree accepts the offer, he signs away his rights to pursue other causes of action against the offeror. In doing so, he will be giving up probable recoveries which, when added to the probable recovery in this case, might substantially exceed the section 998 offer in this case. On the other hand, if he rejects what he knows to be a reasonable offer *for this case*—and, moreover, an offer he will have a hard time surpassing *in this case*—he is forced to run the considerable risk he will have to pay his opponent's costs *in this case.*

Second, by placing a general release clause in a Code of Civil Procedure section 998 offer an offeror obtains an unfair advantage. The offeror is allowed to impose the pressure of cost-shifting in a case which is before the court to force settlement of other actual or potential cases which are not before the court. This is not the purpose of section 998 and its cost-shifting provisions. The purpose of section 998 is to encourage reasonable settlement of the cause which is before the court, not to provide one party with additional leverage to impose its terms in other disputes which may exist between the parties.

Indeed if settlement of other actual and potential lawsuits can be embraced in a Code of Civil Procedure section 998 offer, there is no reason the offeror could not include requirements the offeree do all kinds of other things unrelated to the cause being litigated before the court, such as a promise to buy a million widgets from the offeror, or whatever.

Third, the offeree is only allowed to count his recovery *in this case* in determining whether he achieved a more favorable judgment than the offer. Hence the Code of Civil Procedure section 998 offer itself should only be allowed to embrace settlement *of this case*. If we allow the section 998 offer to embrace the settlement of other actual and potential cases, then logic dictates we should count the recoveries or potential recoveries in those other cases in determining whether the offeree achieved an outcome more favorable than the section 998 offer. In most instances, that would require waiting for several years after the judgment in the present case was entered, which doesn't seem practical. But it does highlight the absurdity of allowing a section 998 offer to include a "general release" or any other language purporting to resolve other actual or potential litigation between the parties while only allowing the offeree to count his recovery in the case before the court when determining whether that recovery exceeded the section 998 offer.

Fourth, nothing in the language of section 998 itself suggests it contemplates an offer which covers anything other than the causes of action which are before the court in the precise cause which is otherwise going to trial. The courts certainly have understood that language to be so limited. "[T]he reasonableness of a defendant's offer . . . represents a reasonable prediction of *the amount of money*, if any, defendant would have to pay plaintiff *following a trial*, . . ." (*Elrod* v. *Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699 [241 Cal.Rptr. 108].) The offer thus does not embrace the amount of money the defendant might have to pay the plaintiff in causes of action which will *not* be resolved at the trial of the litigation in which the offer is made. Consequently, the offer cannot require the plaintiff to terminate or abstain from pursuing those other causes of action as the price of receiving the monetary consideration the defendant tenders.

Fifth, the legislative purpose of the Code of Civil Procedure section 998 legislation is furthered by limiting the offer to the precise cause which otherwise is going to trial. That purpose is to encourage settlement of individual cases which are in litigation on fair and reasonable terms and thereby save the courts and litigants the costs of trial. ". . . [S]ection 998 achieves its purpose by punishing a party who fails to accept a *reasonable* offer from the other party." [Italics added.] (*Hurlbut* v. *Sonora Community*

*Hospital* (1989) 207 Cal.App.3d 388, 408 [254 Cal.Rptr. 840].) For reasons described above, this legislative purpose is distorted and defeated if the courts allow section 998 offers to encompass "general releases" and similar terms going beyond the precise cause which is otherwise going to trial.

The majority seeks to characterize the "general release" in this case as somehow confined to the precise causes of action that were being litigated in this case. Thus, according to that opinion, the offer does not suffer from any of the vices which bother me.

While it might be reassuring and certainly would have saved me time and effort to accept that narrow view of this general release, I was unable to do so. Other terms of this offer required the offeree to dismiss with prejudice all the claims which were the subject of the cause before the court in this action. A "general release" confined to those causes of action would be mere surplusage—a completely redundant term. Res judicata takes care of any concern as to the possible revival of the dismissed claims and does so at least as effectively as would a "release" of those causes of action.

So when the offer contained a separate and distinct term requiring a "*general* release" in addition to dismissal of the claims actually before the court, what is the reasonable interpretation of that term? I submit the term meant what it normally means—a general relinquishment of all causes of action, whether embraced in complaints already filed in the courts or ones which might be filed in the future. This meaning of the phrase "general release" has become a recognized term of art in the law and among lawyers. It is a term with a settled meaning. Indeed that settled meaning even has been recognized in statutes. (See, e.g., Civ. Code, § 1542.)

Accordingly, when defendant made a Code of Civil Procedure section 998 offer embodying as one of its conditions this common term of art—a demand for a "general release"—the plaintiff could only place one reasonable construction on that part of the defendant's offer. If he were to receive the money the defendant was offering he would be required to execute a standard "general release," not just dismiss his present cause. As commonly used among lawyers, in judicial decisions and in statutes, such a release would bar actual or potential causes of action beyond those embodied in the specific litigation that would go to trial if he rejected the offer.

If this is the proper reading of the "general release" condition included in this Code of Civil Procedure section 998 offer—and I submit it is the most and perhaps the only reasonable reading of that part of the offer—then that section 998 offer is infected with all the vices discussed earlier in this

opinion. For those reasons, the section 998 offer is unreasonable and invalid. Accordingly, it cannot be the basis of a cost-shifting award under section 998 and that award should be reversed.