Filed 1/25/24  Wu v. ABC Lucky Transportation CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TAO WU,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ABC LUCKY TRANSPORTATION, INC., et al.,<br><br>    Defendants and Respondents. | B323494, B326800<br><br>(Los Angeles County Super. Ct. No. 20PSCV00512) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Affirmed.

Law Offices of Steve Qi & Associates, Steve Qi, Steven Sugars, Zixuan Zhou for Plaintiff and Appellant.

Law Office of Helen Wong, Helen Wong for Defendants and Respondents.

———————————————

Tao Wu sued his employer and its alleged alter ego for Labor Code violations, including unpaid overtime wages. He accepted defendants' Code of Civil Procedure section 998 settlement offer, which provided that judgment would be entered against the employer in exchange for $35,000 but did not specifically reference the employer's alleged alter ego.[1] After the court dismissed the employer but not its alter ego from the action, the alter ego moved to dismiss himself as well, contending the section 998 offer resolved the lawsuit as to both defendants. The trial court agreed, dismissed the alter ego, and awarded Wu $10,000 in attorney fees as authorized by the Labor Code for an action for unpaid wages.

Wu contends the court misinterpreted the section 998 offer as applying to both defendants and abused its discretion in awarding only $10,000 in attorney fees. We disagree with both contentions, and thus affirm the dismissal judgment and attorney fee order.

### BACKGROUND

#### A.    Settlement Offer

Wu was employed as a driver by ABC Lucky Transportation, Inc. (ABC) and its owner and alleged alter ego, Huilong Lai.

He filed a complaint against ABC and Lai, alleging he "was employed by Defendants ABC Lucky and Lai (collectively 'Employer'), and each of them, as a driver . . . ." Wu alleged that both "employer" and "Defendants, and each of them" violated various Labor Code provisions by failing to pay overtime wages,

---

[1] Undesignated statutory references will be to the Code of Civil Procedure.

2

provide rest and meal periods, timely pay wages upon termination, and provide complete and accurate wage statements. Wu also alleged he was wrongfully terminated after requesting overtime wages. Wu asserted eight causes of action, including one for failure to pay overtime wages in violation of Labor Code sections 221, 223 and 510. Among other damages, he sought $10,561.70 in unpaid overtime pay.

In paragraph 14 of the complaint Wu alleged Lai was ABC's alter ego, as follows:

"ALTER EGO: Plaintiff is informed and believes and therefore alleges that Defendant ABC Lucky, . . . at all times herein mentioned, was alter ego of Defendant Lai. Plaintiff is informed and believes, and thereon alleges that there exists, . . . at all times mentioned herein, a unity of interest and ownership between Defendant ABC Lucky and Defendant Lai, such that any individuality and separateness between the individual Defendant Lai and the business entity Defendant ABC Lucky have ceased. Defendant Lai has at all times exercised control and dominion over Defendant ABC Lucky with a disregard for the separate legal status of the entity in an attempt to defraud Plaintiff. Adherence to the separate existence of Defendant ABC Lucky as separate entities distinct and separate from Defendant Lai would permit an abuse of the corporate privilege and would sanction fraud and promote injustice."

On February 8, 2022, Wu moved for summary judgment, arguing that Lai was his joint employer as the Industrial Wage Commission defines that position. The motion never came on for hearing.

Defendants offered to settle the case once before Wu moved for summary judgment and three times afterward.

3

On February 28, 2022, defendants' counsel, Helen Wong, sent Wu a fifth settlement offer, this one pursuant to section 998, which provided: "Defendants make the offer as follows: [¶] Judgment in the amount of $35,000.00 against Defendant ABC Lucky Transportation, Inc., and in favor of Plaintiff Tao Wu. This Judgment is in addition to the costs and reasonable attorney's fees that may be claimed by [Wu] . . . ."

Wu accepted the offer and the court dismissed ABC from the action.

Lai thereafter moved to dismiss the action against himself as well on the ground that the section 998 offer resolved the entire case as to both defendants. This was so, Lai argued (incorrectly) because Wu alleged no separate cause of action against Lai, but alleged only that Lai was ABC's alter ego. Lai argued that "[t]he alter ego allegations in paragraph 14 are the only allegations pertaining to [Lai] in the entire Complaint. The[r]e is no allegation of any wrongdoing by [Lai] individually." Lai argued that as an alter ego defendant, he had no separate primary liability to Wu. (However, as noted above, Wu alleged that Lai was both ABC's alter ego and Wu's joint employer.)

Lai supported his motion with Wong's declaration. In it, she stated that before the February 28, 2022 section 998 offer, "defendants" had made four settlement offers to Wu, on January 14 and February 22 and 24 (twice), 2022. Wong declared Wu could not have understood the section 998 offer to apply only to ABC because the offer was "much more generous than all prior settlement offers made by Defendants."

Wu opposed the motion, arguing the offer resolved the case only as to ABC, not Lai. He argued (correctly) that he alleged

4

that Lai was not only ABC's alter ego but also his (Wu's) joint employer.

Wu supported his opposition with a declaration from his counsel to the effect that counsel understood defendants' section 998 offer to apply only to ABC. Counsel declared this understanding was based both on the plain language of the offer and on his impression that Lai, as an individual defendant, probably believed he could prevail, where ABC could not, because it is much harder to prove that an individual is an alter ego of a corporate defendant, or a joint employer, than it is to refute clear evidence of an admitted corporate employer's Labor Code violations.

The trial court found that defendants' section 998 offer was "not ambiguous and not reasonably susceptible to more than one interpretation." It found that notwithstanding the offer's specific reference to judgment against ABC, and failure to reference Lai, the offer by its "plain meaning" applied to both ABC and Lai because it was made by "defendants," plural. (The court made no mention of counsels' declarations.)

The court therefore granted defendants' motion and ordered Lai dismissed.

Wu appeals from the resulting judgment of dismissal.

## B. Attorney Fees

In later proceedings, Wu sought $64,502.50 in attorney fees on his cause of action for unpaid overtime, multiplied by two due to the contingent nature of the litigation, plus $4,550.76 in costs, for a total of $133,555.76. Defendants opposed the request in part, arguing it was inflated. In support of defendants' opposition, Wong, their counsel, declared that (1) Wu's overtime claim was easily provable on undisputed facts, as he always

possessed his timesheets, which in any event defendants had also produced early in the litigation, and (2) Wu's summary judgment motion was unnecessary because defendants were positioned to settle the litigation even before that motion was filed.

The court found that Wu's counsel's rates were reasonable but the time spent on Wu's overtime claim was not, as this claim constituted only one of eight causes of action. The court found that no multiplier would be appropriate, and awarded Wu only $10,000 in attorney fees and $2,291.20 in costs.

Wu separately appeals from this order, contending the court abused its discretion in awarding only $10,000 in attorney fees.

We consolidated the appeals.

## DISCUSSION

### A. Defendants' Section 998 Offer Applied to both ABC and Lai

Wu contends defendants' section 998 offer pertained only to ABC, not Lai. We disagree.

Section 998 provides that "[n]ot less than 10 days prior to commencement of trial . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time." (§ 998, subd. (b).)

A section 998 offer is governed by principles generally applicable to contracts. (*Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 907.) The fundamental goal of contractual interpretation is "to give effect to the mutual intention of the parties." (Civ. Code, § 1636.) If contractual language is unambiguous, it governs. (Civ. Code, § 1638.)

6

An offer to compromise is ambiguous if it is capable of two or more reasonable constructions.  (See *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390 (*Powerine*).)  The language must be construed in the context of the instrument as a whole, and in the circumstances of the case.  If an ambiguity is not eliminated by the language and context, it is generally construed against the party that caused the uncertainty to exist.  (*Id*. at p. 391.)

"Interpretation of a written document where extrinsic evidence is unnecessary is a question of law . . . .  [Citation.]  When the meaning of contractual language is doubtful or uncertain and parol evidence is introduced to aid in its interpretation, the meaning of the contract is a question of fact."  (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1559.)  In such a case, a "contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates" (Civ. Code, § 1647), and "evidence of consistent additional terms" may be admitted to explain or supplement the terms set forth in the writing (Code Civ. Proc., § 1856, subd. (b)).  In other words, even when contractual language appears to be clear, context matters.

However, extrinsic evidence may not be admitted to give an instrument a meaning to which it is not reasonably susceptible.  (*United States Leasing Corp. v. duPont* (1968) 69 Cal.2d 275, 284; see *LaCount v. Hensel Phelps Constr. Co.* (1978) 79 Cal.App.3d 745 [evidence of custom and usage of words in a certain trade is inadmissible to vary terms of a contract].)  "Parol evidence is admitted where uncertainty exists as to the meaning of a contract to show what the parties meant by what they said, but it is not admitted to show that they meant something other than

what they said." (*Rilovich v. Raymond* (1937) 20 Cal.App.2d 630, 639.)

In the absence of any conflicting extrinsic evidence, interpretation of a section 998 offer is a question of law that we review de novo. (See *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911.) When extrinsic evidence is admitted to interpret contract language, we review a trial court's ruling for substantial evidence. (*Ibid.* [factual determinations made by a trial court on a motion to enforce a settlement must be affirmed if the trial court's factual findings are supported by substantial evidence].)

Here, defendants' section 998 offer was capable of two reasonable constructions. On the one hand, the offer expressly stated that judgment would be entered against ABC, and said nothing about Lai. Pursuant to this facially plain language, defendants offered to accept judgment only against ABC.

However, this language "must be construed in the context of that instrument as a whole, and in the circumstances of that case." (*Powerine*, *supra*, 37 Cal.4th at p. 391.)

Three such circumstances are pertinent. First, that the offer was made by "defendants" suggests it applied to both ABC and Lai, as Lai would have no authority *as a defendant* to make an offer on behalf of ABC. As a defendant, Lai could act only for himself.

Second, defendants have one counsel, Wong, who made four settlement offers to Wu on behalf of "defendants" before the section 998 offer. The record thus suggests that ABC and Lai litigated their defenses jointly, and nothing suggests the defenses were separate. Wu adduces no circumstance (other than the language of the offer) suggesting that defendants were disunified in their defense of this action.

8

Third, Wong appeared to have been under the impression that Wu alleged only an alter ego theory of liability against Lai. Although this was incorrect—as Wu also alleged joint employer liability—Wong's misunderstanding suggests that ABC and Lai believed they were positioned in this litigation as a unified alter-ego-corporation entity, as Wong (mis)understood Wu alleged, and therefore would be treated as unified for purposes of settlement.

The language and circumstances thus created an ambiguity by suggesting that defendants' intention varied from the language in their section 998 offer. The circumstances further suggested that despite what defendants said, Wu knew what they meant.

Considering not only the language of the offer but also its context, the trial court was therefore entitled to find that defendants intended their section 998 offer to apply to both ABC and Lai notwithstanding its reference only to ABC, and that Wu knew of this intention, and by accepting the offer acceded to it.

Although the court mistakenly found the *language* of the section 998 offer to be unambiguous, this finding was apparently grounded on the court's opinion that the circumstances accompanying the language made the parties' *intent* so obvious as to be unambiguous. We need not decide whether the court was right in this respect; it suffices that the court's ultimate interpretation of the offer was supported by the record.

Wu argues that the trial court impermissibly ignored his counsel's declaration. We disagree. Although the court did not mention Wu's counsel's declaration in its order and, as discussed above, erroneously found defendants' section 998 offer to be unambiguous, nothing suggests the court ignored counsel's declaration.

9

We will therefore affirm the judgment of dismissal.

## B. Attorney Fees

Wu contends the trial court abused its discretion by awarding only $10,000 in attorney fees for his overtime claim. We disagree.

### 1. Applicable Law

A prevailing employee is entitled to recover "reasonable attorney's fees" relating to claims for unpaid wages. (See Lab. Code, § 218.5, subd. (a), Code Civ. Proc., § 1194, subd. (a).)

A trial court has broad authority to determine the amount of reasonable attorney fees. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "[T]he primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method. The lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 26 (*Lealao*).) Once the trial court has fixed the lodestar, "it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so it is a reasonable figure." (*Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 77.) The lodestar may be adjusted at the discretion of the trial court "after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624.)

A court also has broad discretion to apportion fees among causes of action (see *Cruz v. Fusion Buffet, Inc.* (2020) 57

10

Cal.App.5th 221, 235; *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129), even where the issues are connected, related or intertwined (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1365).  In exercising this discretion, the court need not apportion fees where claims are so intertwined that separation of time is "impracticable, if not impossible" to achieve.  (*Abdallah v. United Sav. Bank* (1996) 43 Cal.App.4th 1101, 1111.)

We review an attorney fee award for abuse of discretion. (*Lealao*, *supra*, 82 Cal.App.4th at p. 25.)  " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339.)

The " ' "experienced trial judge is the best judge of the value of professional services rendered in his court . . . ." ' " (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64.)  Even if he or she did not preside over the trial, a trial judge has a unique familiarity with the value of services in the community and the skill and time commitments necessary to litigate specific types of cases. Thus, " ' "while [the trial judge's] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ibid.*)

### 2. Application

Here, Wu was entitled to attorney fees only as to one of his eight causes of action, for unpaid overtime in the amount of $10,561.70.  That claim presented factual and legal issues both common with and discrete from Wu's other claims, e.g., for missed meal and rest breaks or wrongful termination, and was

11

provable based on calculations derived from documents Wu possessed early in the litigation. Considering the nature of the litigation, difficulty of proving Wu's overtime claim, the presence of discrete factual and legal issues (especially as to Wu's wrongful termination claim), and the amount involved, $10,561.70, we conclude the trial court acted within its discretion in denying Wu's request for a lodestar multiplier and determining that $10,000 was a fair attorney fee award.

Wu argues that all eight of his causes of action were closely intertwined, requiring evaluation of evidence relating to the days and hours plaintiff worked and his status as employee or independent contractor, which was a hotly contested issue requiring evaluation of pay stubs, time records, and deposition testimony, evidence that was also necessary to establish his other claims. He argues his counsel spent a total of 191.2 hours in this action preparing pleadings, drafting discovery and discovery motions, obtaining testimony from Wu, and refuting defendants' independent contractor defense. Wu argues counsel had to review and organize Wu's W-2, paystubs, and time records, and prepare a summary judgment motion, and even had he brought only one cause of action for unpaid wages, his attorney could not have completed all the work necessary to be ready for trial within the approximately 30 hours that $10,000 of attorney's fees would represent.

However, Wu does not dispute that his overtime claim was provable largely on calculations derived from documents he possessed early in the litigation, and offers no evidence supporting his contention that a lone overtime claim would have required extensive discovery and law and motion practice relating to his status as an employee or independent contractor.

We therefore cannot conclude that the trial judge's appraisal was "clearly wrong." (*Chavez v. Netflix*, *supra*, 162 Cal.App.4th at p. 64.)

## DISPOSITION

The judgment and order are affirmed.  Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED


                                                    CHANEY, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.