[No. B171741. Second Dist., Div. Eight. July 13, 2004.]

ERIKA A. BERG, Plaintiff and Appellant, v.
RONALD L. DARDEN, Defendant and Respondent.

722

COUNSEL

Cohen & Rudd, Arlan A. Cohen for Plaintiff and Appellant.

Neal, Haushalter & Ray, Burdick M. Ray and Thomas L. Gourde for Defendant and Respondent.

OPINION

BOLAND, J.—

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2001, appellant Erika A. Berg initiated this action against her former dentist, respondent Ronald L. Darden, for injuries she suffered as a result of his alleged malpractice.

On February 8, 2002, Berg's attorney, Arlan A. Cohen, sent a letter to Darden's attorney, Burdick M. Ray. The three-page letter addressed, among other things, discovery-related issues and the parties' respective positions regarding the merits of the litigation. In the last paragraph of the letter, which forms the basis for the instant appeal, Cohen stated:

"This letter includes and hereby implements a statutory C.C.P. Section 998 offer by Erika Berg to settle this case for $225,000. If there is no acceptance of this offer within 30 days, we will, if at trial we receive a greater sum from Dr. Darden, seek the full panoply of 998 awards, including prejudgment interest starting from the date of service and expert costs."

Cohen faxed the letter to Ray's office on the evening of February 8, 2002. Cohen claims he also sent the letter to Ray by mail.

Ray received and reviewed the letter, but he told Darden he did not believe it was a valid Code of Civil Procedure section 998 (section 998) offer. Darden never responded to Cohen's February 8 letter.

A jury trial was held in June 2003. A jury found unanimously in favor of Berg and awarded her damages of approximately $524,000.

Berg filed a posttrial motion to recover expert witness expenses, litigation costs and prejudgment interest from the date her statutory settlement offer was made. (§ 998, subd. (c); Civ. Code, § 3291.)

Darden opposed the motion on the ground that the settlement offer was ineffective under section 998 and had not been properly served. The trial court found Berg had made an ineffective section 998 offer and denied her motion. This timely appeal followed.

## DISCUSSION

■ The primary issue on appeal is whether the trial court erred in concluding Berg's February 8, 2002, settlement offer was ineffective as a statutory offer of compromise, thereby depriving Berg of the opportunity to recover certain expert witness expenses, costs and prejudgment interest. Darden also contends the offer was invalid because it was not properly served. In a case such as this, involving the construction of a statute and its application to undisputed facts, our review is de novo. (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 329 [86 Cal.Rptr.2d 398] (*Mesa Forest Products, Inc.*). )

1. *Berg's offer satisfied section 998's requirement of specificity and clarity, despite the fact that it did not identify the method by which the litigation would be finally resolved.*

 a. *Greater specificity and clarity best serves section 998's goal to encourage and expedite pretrial settlements.*

Section 998 provides that any party to an action may "serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. . . ." (§ 998, subd. (b).) "If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly." (§ 998, subd. (b)(1).) However, "[i]f an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award . . . , the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses . . . actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs." (§ 998, subd. (d).) An offer is deemed withdrawn if it is not accepted before trial, or within 30 days after it is made. (§ 998, subd. (b)(2).)

Fundamental rules of statutory construction require that, in construing section 998, we attempt to " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]' " (*T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338] (*T.M.*

*Cobb*).) That purpose is clear: Section 998 is intended "to encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)" (*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804 [12 Cal.Rptr.2d 696, 838 P.2d 218].)

There are two important reasons statutory compromise offers must be clear and specific. First, from the perspective of the offeree, the offer must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he may have to shoulder his opponent's litigation costs and expenses. (*Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 585 [11 Cal.Rptr.2d 820].) Thus, the offeree must be able to clearly evaluate the worth of the extended offer. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 801 [101 Cal.Rptr.2d 167] [section 998 offer which required confidentiality as a condition to settle a defamation action rendered statutory offer ineffective because it was impossible to evaluate the offer's monetary worth to plaintiff].) The party extending the statutory offer of compromise bears the burden of assuring the offer is drafted with sufficient precision to satisfy the requirements of section 998. (*Taing, supra,* 9 Cal.App.4th at p. 585; *People ex rel. Lockyer v. Freemont General Corp.* (2001) 89 Cal.App.4th 1260, 1267 [108 Cal.Rptr.2d 127].) To that end, a section 998 offer is construed strictly in favor of the party sought to be subjected to its operation. (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 543 [135 Cal.Rptr.2d 404]; *Barella, supra,* 84 Cal.App.4th at p. 799.)

Second, section 998 offers must be written with sufficient specificity because the trial court lacks authority to adjudicate the terms of a purported settlement. "Section 998 was designed to encourage settlement of disputes through a straightforward and expedited procedure." (*Bias v. Wright* (2002) 103 Cal.App.4th 811, 819 [127 Cal.Rptr.2d 137].) Once the offer is accepted, the clerk or court performs the purely ministerial task of entering judgment according to the terms of the parties' agreement. (§ 998, subd. (b)(1) ["If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly."].) Neither the clerk nor the court is authorized to adjudicate a dispute over the terms of section 998 agreements before entering judgment. (*Bias, supra,* 103 Cal.App.4th at p. 819; *Saba v. Crater* (1998) 62 Cal.App.4th 150, 153 [72 Cal.Rptr.2d 401] (*Saba*) ["[T]he clerk or judge merely enters judgment following the filing of a written acceptance of the offer."].)

### b. *Berg's offer was sufficiently specific to satisfy the statutory requirements.*

Darden contends Berg's offer was insufficient to show that its acceptance would result in a final disposition of the underlying action, because the offer failed to indicate whether she (1) sought to have judgment entered against Darden, (2) sought to have an "award" entered in her favor, or (3) was willing to dismiss her malpractice action with prejudice. In Darden's view, the offer merely evidenced Berg's "general desire to resolve the case, [and was] not a formal statutory offer" intended to result in a " ' "final determination of the rights of the parties in an action or proceeding." ' " (*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1055 [117 Cal.Rptr.2d 685] (*American Airlines*).) He is mistaken.

Berg's settlement offer undoubtedly could have been more formal (sent independently, and not included merely as the last paragraph of a letter addressed to other issues), and could have been stated with more precision (specifically identifying entry of judgment against Darden as the proposed final disposition). It is in the best interests of the parties and the court that section 998 offers be as clear, straightforward and thorough as possible. To advance the important purposes of clarity of understanding and ministerial ease discussed above, courts have found that "the legislative purpose of section 998 is generally better served by a bright line rule in which the parties know that any judgment will be measured against a single, valid statutory offer . . . ." (*Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 391 [85 Cal.Rptr.2d 4]; see also *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 272 [276 Cal.Rptr. 321, 801 P.2d 1072] (*Poster*) [favoring "bright line" rule in interpreting section 998].) Nevertheless, we do not find fatal Berg's failure to reference the specific method by which she proposed to dispose of the case should Darden decide to accept her offer.

A statutory offer of compromise is effected once a party to a lawsuit serves "an offer in writing upon any other party to the action to allow judgment to be taken . . . in accordance with the terms and conditions stated at that time." (§ 998, subd. (b).) If no other "terms and conditions" apart from the consideration required to consummate the settlement are specifically set forth, then the offer, by virtue of default to the statutory language, is simply intended as one to "allow judgment to be taken" in exchange for the specified amount of funds. An otherwise clear section 998 offer is not rendered invalid simply because it does not track precisely the language of the statute.

In determining the intent of a statute, " 'we first examine the words of the statute itself . . . . Under the so-called "plain meaning" rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . However, the "plain meaning" rule does not prohibit a court from

determining whether the literal meaning of a statute comports with its purpose. . . . If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. . . . " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute and avoid an interpretation that would lead to absurd consequences.' . . ." . . . The legislative purpose will not be sacrificed to a literal construction of any part of the statute.' " (*Mesa Forest Products, Inc., supra,* 73 Cal.App.4th at pp. 329–330, quoting *Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1515–1516 [73 Cal.Rptr.2d 450], citations omitted.) Courts have adhered to this principle and found the purposes of section 998 best served by enforcement of statutory offers which, despite the absence of the statutory language proposing to "allow judgment to be taken," make it clear that settlement will result in a final disposition of the litigation. (See *American Airlines, supra,* 96 Cal.App.4th at p. 1055; *Goodstein v. Bank of San Diego* (1994) 27 Cal.App.4th 899, 906 [32 Cal.Rptr.2d 740] (*Goodstein*).)

By her February 8, 2002 letter to Darden, Berg "implement[ed] a statutory C.C.P. Section 998 offer . . . to settle this case for $225,000." It is undisputed that Darden's attorney understood Berg's letter to contain a section 998 offer of compromise, albeit one he believed ineffective.

As Darden explicitly acknowledges, "[f]or an offer to be valid pursuant to [section] 998, there must be a formal, written offer that is sufficient to show that its acceptance will result in a final disposition of the underlying lawsuit." That requirement is satisfied here. Darden relies on the rationale of *American Airlines* to support his argument that Berg's offer was insufficiently detailed to show that its acceptance would operate as a final determination of the parties' rights in the action. His reliance is misplaced.

In *American Airlines,* defendants tendered a section 998 offer to settle the lawsuit for $59,200, in return for plaintiff's dismissal of the lawsuit with prejudice. The offer to settle did not provide for entry of judgment in plaintiff's favor. (*American Airlines, supra,* 96 Cal.App.4th at p. 1030.) Plaintiff failed to obtain a more favorable judgment at trial, and defendants sought costs and expert witness fees in excess of $126,000. Plaintiff argued the statutory settlement offer was ineffective because it did not specifically provide for entry of judgment as a condition of settlement. The court rejected plaintiff's argument. It found that, so long as the compromise offer contemplated some final disposition of the lawsuit which functioned as the legal equivalent of a judgment, entry of a judgment was not strictly required. (*Id.* at pp. 1055–1056.)

A similar result was reached in *Goodstein, supra,* 27 Cal.App.4th 899, an action against a bank for negligence and slander of title. The bank extended a statutory compromise offer to pay $150,000, in exchange for plaintiff's execution of a general release and dismissal of the action with prejudice. Plaintiff rejected the offer, but failed to obtain any recovery, and judgment was entered in favor of the bank. The bank sought and was awarded its costs and expert witness fees under section 998, subdivision (c). On appeal, plaintiff argued the bank's offer was invalid under section 998 because it failed "to allow judgment to be taken" against the bank. (*Goodstein, supra,* 27 Cal.App.4th at p. 905.) The court disagreed and found entry of judgment was not strictly required by statute. A voluntary dismissal, as part of a compromise settlement agreement, operated as the equivalent of a "judgment" within the meaning of section 998. " 'Judgment' is defined in Code of Civil Procedure section 577 as 'the final determination of the rights of the parties in an action or proceeding.' ' "[A] valid compromise agreement has many attributes of a judgment, and in the absence of a showing of fraud or undue influence is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy." ' (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 677 [186 Cal.Rptr. 589, 652 P.2d 437].)" (*Goodstein, supra,* 27 Cal.App.4th at pp. 905–906.)[1]

■ No different result is required here. So long as it is clear that the written offer of compromise is made under section 998 and, if accepted, will result in entry of judgment—the expected and standard procedural result unless specific terms and conditions stated in the offer provide otherwise—the offer need not identically track the language of the statute under which it is made. If the offeree is uncertain about some aspect of the offer, or would prefer the action be dismissed rather than have a judgment entered against him, he is free to explore those matters with the offeror, or even to make

---

[1] After *Goodstein* was decided, section 998 was amended to extend its provisions to actions resolved by arbitration. To that end, the statute was amended to add the language "to allow . . . *an award* to be entered . . . in accordance with the terms and conditions stated at that time." (Italics added.) The court in *American Airlines* viewed the expanded language as a "suggest[ion] . . . that the Legislature generally approved of the conclusion reached in *Goodstein*, that entry of judgment in court is not strictly required." (*American Airlines, supra,* 96 Cal.App.4th at p. 1056, fn. omitted.) We agree both that the Legislature implicitly approved the result in *Goodstein* and intended section 998 be applied and interpreted in a manner which best implements its purpose. However, we disagree that the expanded language specifically evidences this intention. Rather, it is clear from the legislative history, of which we take judicial notice, that the addition of this language was intended specifically to make the statute's provisions applicable to settlement offers made and accepted or rejected in arbitrable disputes. (See, e.g., August 19, 1998 letter from author of bill, Senator Kopp, ["change intended simply to extend existing provisions [of section 998] to include costs incurred in arbitration."].) Nevertheless, the reasoning of *American Airlines* and *Goodstein* holds true: The Legislature intended section 998 to cover any circumstance by which settlement would result in termination of the action as between the parties to the agreement.

counterproposals during the period in which the statutory offer remains outstanding. By doing so, he will not run the risk of having the original offer revoked and may still accept that offer on the terms extended. Although the principles applicable to contract disputes generally also apply to section 998 offers and acceptances (*T.M. Cobb, supra,* 36 Cal.3d at p. 280), that rule obtains "only where such principles neither conflict with the statute nor defeat its purpose." (*Ibid.*) This case presents a circumstance in which application of contract principles would operate to defeat the purpose of section 998. Under ordinary contract principles, a counteroffer operates as a rejection of an offer. Under section 998, however, a counteroffer does not terminate the offer, which may be accepted any time before it expires or is revoked. (*Poster, supra,* 52 Cal.3d at p. 270.)

■ It requires no statistical study to establish what every litigator knows: once a section 998 offer of compromise is extended, negotiations between parties during the 30-day period are a normal occurrence in virtually every personal injury action. Permitting, indeed encouraging, such routine exploration and discussion of settlement alternatives among parties, without endangering the viability of an extant offer, best advances the policy of encouraging settlements. According to our Supreme Court: "The legislative purpose of section 998 is better served by the bright line rule . . . under which a section 998 offer is not revoked by a counteroffer and may be accepted by the offeree during the statutory period unless the offer has been revoked by the offeror." (*Poster, supra,* 52 Cal.3d at p. 272 [276 Cal.Rptr.2d 321, 801 P.2d 1072].)[2] Once a section 998 offer of compromise has been made, it remains open until it is unequivocally rejected, formally revoked, or lapses due to the passage of time. (*Guzman v. Visalia Community Bank* (1999) 71 Cal.App.4th 1370, 1378 [84 Cal.Rptr.2d 581] [Neither mere criticism of offer as "insulting and demeaning," nor a "request" for better terms, constitutes an unequivocal rejection of statutory compromise offer, and neither cuts off offeree's power to accept.]; *Poster, supra,* 52 Cal.3d at p. 270 [counteroffer does not terminate section 998 offer and offeree is still free to change his mind and accept the original offer anytime before it expires or is revoked.])[3]

■ In sum, we hold that a statutory offer of compromise need not contain any "magic language," so long as it is clear the offer, which must be written, is made under section 998 and, if accepted, will result in the entry of

---

[2] However, once a statutory offer of compromise is accepted, the acceptance must be "absolute and unqualified," and may not set forth any qualifications or conditions not contained in the section 998 offer. (See *Bias v. Wright, supra,* 103 Cal.App.4th at p. 820 ["acceptance" of section 998 which is conditioned on the parties bearing their own costs—where offer was silent as to costs—was actually a counteroffer, not an unqualified and absolute acceptance.].)

[3] Of course, by criticizing the original offer or making a counteroffer, the offeree always runs the risk that the offeror will revoke it prior to its acceptance. (*Poster, supra,* 52 Cal.3d at p. 272.)

judgment or an alternative final disposition of the action legally equivalent to a judgment. In the absence of a specific alternative disposition stated in the written offer, a section 998 offer, such as the one at issue here, which does no more than refer to the statute and proposes finally "to settle the case" against a particular defendant for a specified sum will, if accepted, result in a "judgment [being] taken" against the offeree by the court. The carrot-and-stick approach of section 998 encourages parties seriously to consider settling disputes before trial while, at the same time, permitting them the flexibility to fashion settlements on terms best suited to the circumstances of a particular action. (*Goodstein, supra,* 27 Cal.App.4th at p. 906 [section 998 " 'does not indicate any intent to limit the terms of the compromise settlement or the type of final disposition' [Citation.]"]; *Mesa Forest Products, Inc., supra,* 73 Cal.App.4th at p. 331 [same]; *American Airlines, supra,* 96 Cal.App.4th at pp. 1055–1056 [section 998 permits offer to deviate from strict language of statute, so long as it is clear that any compromise agreement will result in legal equivalent of a final judgment].)

As a matter of law, we find that Berg's offer minimally satisfied the statutory requirements of section 998. The trial court found otherwise. As a result, the court did not address the merits of the motion and determine whether Berg's statutory offer of compromise was reasonable and made in good faith. It is left to the trial court, on remand, to do so. We offer no opinion with respect to that issue.

### 2. *Berg's section 998 offer was not improperly served.*

Darden also contends that, independent of the ostensible problems with its terms, Berg's section 998 offer was fatally defective because it was not formally served. He insists that, unless the statutory offer of compromise is formally served, the recipient and court will be unable to ascertain when the 30-day period for acceptance expires, or to ascertain the date on which to begin calculating prejudgment interest and expert witness fees. We disagree.

The letter from Cohen to Ray was faxed and received on February 8, 2002. The parties did not have a written agreement to exchange service of documents by facsimile, as required by Code of Civil Procedure section 1013, subd. (e). Consequently, fax service was improper. However, Cohen asserts he also mailed the letter to Ray the same day, and the record contains no evidence to the contrary. In any event, there is no dispute Ray actually received and read the letter, and understood it to be a statutory offer of compromise made under section 998 which he discussed with his client and chose to ignore.

Darden implicitly urges us to adopt a rule that no section 998 offer is effective unless it is accompanied by a formal proof of service. We decline to

do so. Under Code of Civil Procedure section 1013, which governs the rules of service, service by mail is effected upon deposit of the notice "or other paper" in a post office, mailbox, or similar facility maintained by the United States Postal Service, in a sealed postage-paid envelope, addressed to the person to be served at his last stated business address. (Code Civ. Proc., § 1013, subd. (a).) The service is complete at the time of deposit, but any statutory period within which the recipient is required to act on the contents of the missive is extended by five calendar days. (*Ibid.*) Formal proof of service, or a certificate of mailing is one method by which the date of service may be established. (Code Civ. Proc., § 1013, subd. (b).) However, "formal proof of service" is not required. On the contrary, it is sufficient proof of mailing if the "notice or other paper served by mail" bears a notation of the date and place of mailing. (Code Civ. Proc., § 1013, subd. (b).) The letter from Cohen to Ray bears both the date on which it was mailed (February 8, 2002), and the place of mailing (Cohen's business address). The letter was sent to Darden's attorney at the business address he has maintained throughout this litigation.

■ There is simply no merit to Darden's argument that, without formal proof of service, "there was no way for [Darden] to intelligently respond to this offer." First, there is no question Darden's attorney understood the statutory settlement offer to be exactly that. Second, as we stated above, Darden's attorney was free to explore any uncertainties he had with Cohen during the period in which the offer remained open, without precipitating an automatic revocation of the offer. Third, the date on which the calculation of Darden's potential exposure with respect to prejudgment interest [under Civil Code section 3291], began was the same, regardless of whether the offer was served by fax or mail. (See *DeoCampo v. Ahn* (2002) 101 Cal.App.4th 758, 780 [125 Cal.Rptr.2d 79] [under Civil Code section 3291, calculation of prejudgment interest begins on date offer is made].) And, finally, because the parties had no written agreement to exchange service of formal documents by fax, calculation of the date by which Darden needed to respond to the offer would necessarily have to be calculated from the date on which mail service was effected. To be valid, a statutory offer of compromise under section 998 need only be made in writing and clearly identify itself as such. (*Saba, supra,* 62 Cal.App.4th at p. 153 [oral statement on record at deposition ineffective to satisfy requirement that section 998 demand be in wiring]; *Stell v. Jay Hales Development Co.* (1992) 11 Cal.App.4th 1214, 1232 [15 Cal.Rptr.2d 220] [letter which failed to refer or cite to section 998, and which required an "immediate" response was an ineffective statutory settlement offer].) Section 998 requires no more, and neither shall we. " '[A] court should not look beyond the plain meaning of a statute when its language is clear and unambiguous, and there is no uncertainty or doubt as to the

legislative intent.' [Citation.]" (*Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 263 [155 Cal.Rptr. 516].)

## DISPOSITION

The order denying Berg's motion to recover expert witness expenses, litigation costs and prejudgment interest under Code of Civil Procedure section 998 and Civil Code section 3291 is reversed. The matter is remanded and the trial court directed to conduct a hearing on the merits of that motion, and determine whether Berg's statutory offer of compromise was reasonable and made in good faith, consistent with this opinion and the requirements of Code of Civil Procedure section 998. Berg is awarded her costs of appeal.

Cooper, P. J., and Rubin, J., concurred.

On July 16, 2004, the opinion was modified to read as printed above.