Filed 6/2/15  Swan v. Tesconi CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PENNY SWAN,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DOROTHY TESCONI, as Trustee, etc., et al.,<br><br>      Defendants and Appellants. | A138119<br><br>(Sonoma County<br>Super. Ct. No. SCV247226) |

Defendants/appellants Dorothy Tesconi, individually and as trustee of the Charles D. and Dorothy E. Tesconi Trust (Tesconi), and Chad Young (Young) (together, defendants), appeal from the trial court's post-judgment order awarding attorney fees and costs to plaintiff/respondent Penny Swan (Swan).  In issuing the order, the trial court rejected defendants' claim that Swan was precluded from recovering fees and costs and was required to pay defendants' fees and costs because she did not accept defendants' offer to compromise under Code of Civil Procedure section 998 (998 offer) and thereafter failed to obtain a more favorable result.

On appeal, defendants contend:  (1) the trial court erred in determining that the 998 offer was ambiguous and invalid and that Swan was therefore not bound by it; and (2) even if the court did not err in determining that Swan was entitled to fees and costs, the amount of fees awarded was "excessive" and must be reduced.  We reject the contentions and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 22, 2010, Penny and Marvin Swan (together, plaintiffs) filed an action against Tesconi, the owner of the building where the couple rented an apartment, and against Young, who managed the property. Plaintiffs alleged there were severe habitability problems, including inadequate heating, rodent infestation, mold and mildew growth, defective plumbing, and improper venting of exhaust gases. They alleged that Tesconi refused to conduct repairs and properly maintain the premises despite repeated requests, and that when they asked Young for assistance, he verbally harassed and threatened them, making them fear for their safety. In or about November 2009, plaintiffs contacted the City of Santa Rosa (the City) and began withholding rental payments in an effort to force defendants to repair the conditions. Defendants tried to evict plaintiffs by filing unlawful detainer actions, but were unsuccessful. Young continued to harass and retaliate against plaintiffs, and plaintiffs obtained a restraining order against Young.

The City inspected the premises and found they were in substandard condition. The City issued a Notice of Violation on February 23, 2010 and made numerous unsuccessful efforts to force repairs. The City ultimately declared the unit uninhabitable on November 12, 2010, and ordered plaintiffs to vacate the premises. Plaintiffs alleged the following causes of action: negligent and intentional breach of the implied warranty of habitability; negligent and intentional nuisance; negligence; intentional infliction of emotional distress; breach of implied covenant of quiet use and enjoyment; negligent and intentional violation of statutory duties; and retaliation/constructive eviction.

On January 20, 2011, defendants made a 998 offer offering "to settle in full all of the claims of Plaintiff PENNY SWAN for the valuable consideration of THIRTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($35,000), EXCLUSIVE OF RECOVERABLE AND REASONABLE ATTORNEY FEES." The 998 offer further stated, "The above-cited Offer settles all claims, including both economic and non-economic damages, alleged in the underlying Complaint by Plaintiff PENNY SWAN. The amount of $35,000.00 is inclusive of all Plaintiff PENNY SWAN's costs, but is

exclusive of PENNY SWAN's recoverable and reasonable attorney fees." "On signing the below agreement to accept the above-recited valuable consideration in settlement, Plaintiff PENNY SWAN shall file a Notice of Settlement of the Entire Case with the court." "On receipt of the above-recited valuable consideration in settlement, Plaintiff PENNY SWAN shall file a Request for Dismissal with Prejudice of her entire case and all Causes of Action against these offering Defendants." "This Offer will expire within thirty (30) calendar days, or at the time of commencement of trial, whichever occurs first . . . The deadline for acceptance is . . . **February 21, 2011**." "If this Offer is not accepted, and should Plaintiff PENNY SWAN fail to obtain a more favorable judgment or award at trial, Plaintiff PENNY SWAN shall not recover her post-Offer costs or reasonable attorney fees and shall instead pay Defendants' costs and reasonable attorney fees from the time of this Offer. In addition, the court in its discretion may require Plaintiff PENNY SWAN to pay a reasonable sum to cover costs of the services of Defendants' expert witnesses actually incurred and reasonably necessary."[1]

Plaintiffs' attorney, Joshua Katz, who received the 998 offer, was concerned that "the language was unclear and ambiguous," and that "while the contract [i.e., the parties' rental agreement] provided for fees to the prevailing party, the offer did not state that [Swan] would be entitled to fees or was the prevailing party for purposes of fees. Nor did the offer provide for a judgment, which would have entitled [Swan] to fees under the contract."[2] Katz was also concerned that if Swan accepted the offer as worded, she "might be liable for defendants' costs and fees." Katz therefore consulted with a colleague who specializes in housing cases and has experience with 998 offers; she told Katz that the 998 offer was "ambiguous at best." After conducting further research and

---

[1]Also on January 20, 2011, defendants made a 998 offer to Marvin Swan that contained the same terms as the 998 offer to Penny Swan.

[2]The parties' rental agreement provided in part: "The prevailing party in an action brought for the recovery of rent . . . or to compel the performance of anything agreed to be done herein, or to recover for damages to said property, or to enjoin any act contrary to the provision hereof, shall be awarded all of the costs in connection therewith, including . . . reasonable attorney's fees."

consulting with Richard Pearl, "an expert in attorney fees issues and the author of [an attorney fees treatise]," Katz "determined that there were problems" with the 998 offer because it "required [Swan] to file a dismissal, under Civil Procedure section 1717, [such that Swan] would not be entitled to fees pursuant to the contractual fee clause. Also, if [Swan] dismissed, the Defendants would be entitled to their costs in an amount unknown to me. Finally, with a dismissal, for non-contract causes of action either party could claim it achieved its litigation goals and seek fees."

On February 10, 2011, Katz contacted one of defendants' attorneys, Colin Hatcher, by email and voice mail "explaining the issue of attorney's fees" and expressing interest in settling the case if the issue could be resolved. Hatcher replied that Katz needed to speak with defendants' attorney Kevin K. Cholakian, but that Cholakian would not be available to speak with him before February 22, 2011. Because the 998 offer was going to expire on February 21, 2011, Katz called Hatcher to follow up and was told that Cholakian was the only attorney who could discuss settlement issues. Katz therefore left a message for Cholakian explaining that because the offer expired February 21, 2011, he needed to speak with him before then. Katz did not hear from Cholakian. On February 16, 2011, Katz sent a letter to Cholakian explaining that Swan was not going to accept the offer because she "would not be able to recover contractual attorney fees." There was no response to the letter, and the 998 offer expired on February 21, 2011.

On August 12, 2011, Marvin Swan filed a request for dismissal of his case against defendants "[o]nly as to all causes of action brought by Plaintiff Marvin Swan against Defendants Dorothy Tesconi and Chad Young. Each party to bear its own costs." On August 16, 2012, after further discovery and settlement negotiations, Penny Swan and defendants entered into a Stipulated Judgment that provided: "The Parties agree to a stipulated judgment against Defendants, jointly and severally, in a total amount of $32,000, which includes Plaintiff's costs as of the date of the expiration of the . . . 998 offer. A check in the amount of $32,000 will be made payable to [counsel for Swan] and will be sent to [counsel] within 14 days of the filing of the stipulation." The Stipulated Judgment further provided, "The parties will make various post-judgment

4

motions regarding attorney fees and costs." A Notice of Entry of Judgment based on the Stipulated Judgment was filed on September 13, 2012.

Thereafter, Swan moved for attorney fees as the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4), on the ground that a judgment had been entered in her favor in the amount of $32,000. She also filed a memorandum of costs documenting her post-998-offer costs. Defendants moved to tax Swan's costs on the ground that their 998 offer was valid and more valuable than the judgment, making defendants the prevailing parties for the post-998-offer period. Defendants also claimed that Swan's fees and costs were excessive or unrecoverable. Defendants filed their own memorandum of costs claiming entitlement to their post-998-offer costs. Swan moved to strike defendants' costs on the ground that defendants were not prevailing parties because the 998 offer was ambiguous and invalid, and because the judgment she obtained had greater value than what defendants had offered with the 998 offer. The parties also filed competing attorney fees motions.

On December 18, 2012, after a hearing on all of the motions, the trial court denied defendants' request for fees and costs and granted Swan's request for fees and costs. The court found the 998 offer was ambiguous and that Katz "did the right thing by trying to do some research to find out what the risks could be, and furthermore . . . by reaching out to the defense to try to get a clarification. [¶] It might have been a situation where some changes in language would have crafted an offer that could have resulted in an earlier settlement which is again the aim of a 998 policy. So I think plaintiff's did the right thing. [¶] I don't know why the defense did not try to come back and clarify things. And I think the fatal ambiguity meant that the choice not to accept that offer was reasonable and should not create some type of shifting of fees and costs over to the defense after the plaintiffs have gotten a net monetary recovery through the settlement."

The trial court further found that the "billing rates are clearly reasonable. I haven't heard anything about that today, and certainly people can argue rates, but these rates are not excessive or unreasonable in the market and for the work that was being done." As to hours, the court stated: "The Court certainly has listened carefully to the

5

defense argument about possible reductions, [and] I think that there's enough merit to stand by the 10 percent reduction . . . Generally, I think the billing was not vague, it was clear enough, detailed enough for the Court to look at these records and both sides to look at the records." The court found that defendants had made only general statements about the hours and had failed to provide specifics. The court also rejected defendants' argument that the fees should be cut in half because Marvin Swan was no longer a plaintiff in the case and he had waived his right to fees and costs as part of the settlement. The court stated, "It's a red herring to suggest because there was a settlement with Mr. Swan that eliminated his right to collect fees and costs that somehow that impacts [Penny Swan]. And nothing has been given to the Court to specifically suggest that there needs to be a factual segregation up to one half of the hours . . . ." The court awarded Swan $273,071.25 in attorney fees and $15,751.56 in costs.

The trial court set forth the following findings in a written order signed December 27, 2012: (1) the 998 offer was "fatally ambiguous," "uncertain and incapable of valuation," and therefore "did not encourage settlement and served only to muddy the waters"; (2) the term requiring voluntary dismissal of the case "would have naturally led to a defense recovery of unknown costs. [(]*Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 190 [(*Chinn*).)]"; (3) the 998 offer was unclear as to whether either or both of the parties would have been able to recover attorney fees; (4) Katz's attempts to seek clarification of the 998 offer were appropriate, and defendants failed to respond; (5) Swan's decision not to accept the offer was reasonable in light of the "ambiguities and legal consequences" of the 998 offer; (6) Swan obtained a "net monetary recovery" and a "judgment in [her] favor" and is therefore entitled to prevailing party fees and costs under Code of Civil Procedure, section 1032, subdivision (a)(4), and is also entitled to prevailing party attorney fees under the rental agreement and Code of Civil Procedure, sections 1021, 1032, and 1033.5, and Civil Code section 1717; (7) the hourly billing rate of $375 for Swan's attorneys are reasonable "in the local legal market and in consideration of the experience of counsel and the nature of the work performed"; (8) the billing records "were not vague and were sufficiently clear and complete"; (9) "the billed

6

time was reasonable and necessary"; and (10) defendants "failed to meet their burden of challenging any of the hours as excessive or unreasonable," but "the court will reduce the number of hours to be compensated by 10%."

On January 14, 2013, defendants filed a motion for reconsideration on the ground that "new law and new facts compelled the Court to alter its decision." In his declaration in support of the motion, Cholakian stated, among other things, that he did respond to Katz's questions about the 998 offer. He declared: "When I returned [from a February 2011 vacation], I called Mr. Katz and left a message stating that Defendants were willing to pay Plaintiffs' reasonable and recoverable attorneys fees and were willing to settle for those terms if the Plaintiffs had not incurred significant increase in attorneys fees in the short time period since the expiration of the 998 offers. I received no response from Mr. Katz." Cholakian stated he was unable to inform the court of this fact at the December 18, 2012 hearing because he was in trial at the time and was unable to attend the hearing.

Swan opposed the motion, stating that Cholakian's claim that he left a message for Katz was "a complete and utter fabrication." Swan noted that Cholakian's own billing records contained no reference to any such call and that the same records in fact showed that the first discussion between Cholakian and Katz regarding the 998 offer took place on August 17, 2011. Swan asserted that Katz's April 11, 2011 letter to defense counsel Hatcher shows that Katz never received a call from Cholakian. In the letter, Katz stated: " 'I was surprised to learn that defendants believe their 998 offers unambiguously included attorneys' fees . . . I never heard from Mr. Cholakian' " and " 'I received no response to my letter.' " Swan sought sanctions against defendants for bringing a frivolous motion.

Following a hearing on the motion for reconsideration, the trial court took the matter under submission on the issue of sanctions. On April 9, 2013, the court issued an order denying the motion for reconsideration and denying the request for sanctions.

## DISCUSSION

### *1. Validity of 998 Offer*

Defendants contend the trial court erred in determining that the 998 offer was ambiguous and invalid and that Swan was therefore not bound by it. We reject the contention.

As a general rule, a prevailing party in a civil action is entitled to recover its costs from its opponent. (Code Civ. Proc.,[3] § 1032.) However, section 998 establishes a procedure for shifting costs if the prevailing party obtains a judgment less favorable than a pretrial settlement offer made by the other party. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 798.) In that situation, the prevailing party is precluded from recovering its own postoffer costs and must pay its opponent's postoffer costs. (*Ibid*., citing § 998, subd. (c)(1).) The purpose of the cost-shifting statute is to encourage the settlement of litigation without trial by punishing the party who fails to accept a reasonable settlement offer from its opponent. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 152.)

The provisions of section 998 are triggered only if a party has made a valid offer to compromise. (*Westamerica Bank v. MBG Industries, Inc*. (2007) 158 Cal.App.4th 109, 131.) To be valid, a 998 offer must contain terms and conditions that are "sufficiently certain to be *capable of valuation*." (*Chen v. Interinsurance Exchange of the Automobile Club* (2008) 164 Cal.App.4th 117, 121.) "There are two important reasons [998] offers must be clear and specific. First, from the perspective of the offeree, the offer must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he may have to shoulder his opponent's litigation costs and expenses. [Citation.] Thus, the offeree must be able to clearly evaluate the worth of the extended offer." (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 727; *Barella v. Exchange Bank*, *supra*,

---

[3]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

8

84 Cal.App.4th at pp. 801, 803 [998 offer that required confidentiality as a condition to settle a defamation action rendered the offer ineffective because it was impossible to evaluate its monetary worth to plaintiff].) "The party extending the statutory offer of compromise bears the burden of assuring the offer is drafted with sufficient precision to satisfy the requirements of section 998. [Citations.] To that end, a . . . 998 offer is construed strictly in favor of the party sought to be subjected to its operation." (*Berg v. Darden*, *supra*, 120 Cal.App.4th at p. 727.)

"Second, . . . 998 offers must be written with sufficient specificity because the trial court lacks authority to adjudicate the terms of a purported settlement. 'Section 998 was designed to encourage settlement of disputes through a straightforward and expedited procedure.' [Citation.] Once the offer is accepted, the clerk or court performs the purely ministerial task of entering judgment according to the terms of the parties' agreement. (§ 998, subd. (b)(1).) . . . Neither the clerk nor the court is authorized to adjudicate a dispute over the terms of section 998 agreements before entering judgment." (*Berg v. Darden*, *supra*, 120 Cal.App.4th at p. 727.) The issue of whether a 998 offer is sufficiently certain to be enforceable involves a question of law, which we review de novo. (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 268.)

Here, the 998 offer was ambiguous for the reasons set forth by the trial court. First, under *Chinn*, *supra*, 166 Cal.App.4th at page 190, the term requiring Swan to voluntarily dismiss the case with prejudice would have likely led to a defense recovery of costs, the amount of which was undisclosed and unknown to Swan. In *Chinn*, the plaintiff accepted a 998 offer, agreeing to dismiss her tort action in exchange for a monetary payment. (*Id*. at pp. 80–81.) After entry of the order of dismissal, the trial court awarded costs to the plaintiff, but denied recovery of attorney fees. (*Id*. at pp. 180–182.) On appeal, the plaintiff contended the trial court properly awarded her costs as the prevailing party under section 1032, which provides that "the party with a net monetary recovery" is a "prevailing party" who is entitled as a matter of right to recover costs. (*Id*. at p. 185.) The Court of Appeal disagreed, stating the Legislature did not intend to include in its definition of "net monetary recovery" settlement proceeds received by the

plaintiff in exchange for a voluntary dismissal. (*Id.* at p. 189.) Noting that section 1032 defines the term "prevailing party" to also include "a defendant in whose favor a dismissal is entered," the court held that the defendants, as the parties "with a dismissal entered in their favor, were the prevailing parties for the purposes of an award of costs as a matter of right under section 1032." (*Id.* at p. 191)

Under *Chinn*, if Swan had accepted the offer and voluntarily dismissed her case, defendants would have been entitled to costs as a matter of right as the prevailing party, reducing Swan's $35,000 recovery by some unknown amount.[4] (*Chinn*, *supra*, 166 Cal.App.4th at p. 190.) Thus, Swan could not be reasonably certain of the value of the 998 offer, especially when her attorney's inquiries on this very issue went unanswered. Defendants could have avoided this ambiguity by specifying an alternative procedure for awarding costs in the litigation, e.g., that each party would bear its own costs, or that defendants would waive their costs. (*Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 908 (*Goodstein*) ["Nothing in section 1032 prohibits parties from stipulating to alternative procedures for awarding costs in the litigation"].)[5] Defendants could have also clarified their position in response to Swan's attorney's inquiries. Defendants could have also provided for a judgment rather than a dismissal so that they would have no basis to claim their costs as the "prevailing party" "in whose favor a dismissal is entered." (§ 1032.) They did not do so.

Defendants assert that providing for a judgment instead of a voluntary dismissal would not have made their 998 offer less ambiguous because a voluntary dismissal is the

---

[4]Swan later learned, through discovery, including the filing of a motion to compel, that had she accepted the 998 offer, the amount of defendants' costs for which she would have been liable was in excess of $10,000.

[5]In *Goodstein*, the plaintiff claimed that had he accepted the 998 offer calling for dismissal, he would have incurred the risk of having the defendant declared the prevailing party under section 1032 and the defendant pursuing him for costs. (27 Cal.App.4th at p. 908.) The Court of Appeal held this was not a valid reason for rejecting the 998 offer because the offer contained a term specifying that each party was to bear their own attorney fees and costs. In contrast, in our case, the 998 offer did not contain any terms specifying which party or parties were entitled to costs.

legal equivalent of a judgment. *Goodstein* on which defendants rely, does not support their position. (*Goodstein*, *supra*, 27 Cal.App.4th 899.) There, although the Court of Appeal held that requiring a voluntary dismissal as part of a 998 offer does not *invalidate* the offer because a voluntary dismissal, like a judgment, fully disposes of the action, the court did *not* address the impact that a voluntary dismissal—versus a judgment—would have on a party's status as a prevailing party for purposes of recovering fees. (27 Cal.App.4th at pp. 905, 907.) In fact, under *Chinn*, there is a distinction between the two, as a defendant is, as a matter of right, a prevailing party entitled to costs under section 1032 if it obtains a dismissal in its favor, but is not a prevailing party under the same section if a judgment is entered against it in the plaintiff's favor. (*Chinn*, *supra*, 166 Cal.App.4th at p. 190.)

Defendants suggest that *Chinn* was wrongly decided, and assert that the court in another case, *Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, held that where the plaintiff has obtained a "net monetary recovery" *and* the defendants have obtained a "dismissal in their favor," both parties are "prevailing parties" within the meaning of section 1032 such that the trial court has discretion to award costs to either party. The fact that a trial court may have the discretion to award costs to either party— as opposed to being required to award costs to the defendants as a matter of right— however, does not make defendants' 998 offer to Swan more clear and specific. In fact, it would have made it even more difficult for Swan to determine the value of the offer because there was no certainty as to who, if anyone, was entitled to costs under the offer.

Second, more generally, the 998 offer was ambiguous as to whether either or both of the parties would have been able to recover attorney fees. This created significant uncertainty as to the value of the offer. While the parties' rental agreement provided for fees to a prevailing party, the 998 offer required a dismissal, which could have meant that Swan would not be entitled to fees on her contract causes of action. (Civ. Code, § 1717, subds. (a), (b)(2) [the prevailing party in an action on a contract is entitled to attorney fees and costs where the contract specifically provides for prevailing party attorney fees and costs, but where the action is voluntarily dismissed, "there shall be no prevailing

11

party for purposes of this section"].)  In addition, because the contractual fees provision of the rental agreement was broad, it could have been interpreted to also include Swan's tort causes of action which, once dismissed, could form the basis of a claim by both parties that they were prevailing parties for having achieved their litigation goals. (*Chinn*, *supra*, 166 Cal.App.4th at pp. 191–193 [rental agreement was broad enough to incorporate the plaintiff's tort action]; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 621–622 [where the contract does not define who is the prevailing party, the court has discretion to award fees to the party who has achieved their litigation goals, whether by judgment, settlement, or otherwise]; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 12.644, p. 12(11)–42 ["If the action *is upon a contract* providing for attorney fees, a voluntary dismissal generally *bars* recovery of attorney fees . . . [¶] . . .  But if the fees are incurred *in defense of noncontract claims*, . . . the court must base its attorney fees decision 'on a pragmatic definition of the extent to which each party has realized its litigation objectives' "].)  Thus, Swan was faced with the additional uncertainty of not knowing whether she would recover any fees or whether she would end up owing money because of a fee award for defendants that exceeded her $35,000 payment.

Because defendants' 998 offer did not provide for a judgment, did not include defendants' waiver of fees or costs, and did not provide any terms relating to fees and costs by which Swan could be reasonably certain of the value of the offer, the trial court did not err in determining the offer was ambiguous, and therefore, invalid.

### 2. Reasonableness of Fees

Defendants contend that even if the trial court did not err in determining that Swan was entitled to fees and costs, the amount of fees awarded was "excessive" and must be reduced.  We disagree.

The review of trial court determination of the amount of reasonable attorney fees is highly deferential:  "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly

12

wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)  In recognition of a trial court's " ' "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters," ' " review of a trial court's determination of reasonableness is "severely constrained."  (*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 418; *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 ["The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination"].)

Here, there is ample evidence for us to conclude that the trial court's award of fees was reasonable.  A review of the record shows that this was a highly contested and litigated case with extensive discovery, including multiple sets of written discovery and numerous depositions.  Tesconi's deposition was taken in short sessions in order to accommodate her, and Swan was required to file a motion to complete the deposition after defendants' attorney ended a session early due to his schedule, then refused to cooperate in scheduling the completion of the deposition.  In addition to other discovery they were conducting, defendants served deposition subpoenas on Swan's attorneys and included a demand for 20 categories of documents.  Swan successfully moved to quash the subpoenas after defendants refused to withdraw the subpoenas.  Additional time was spent seeking information regarding the amount of costs defendants had incurred at the time the 998 offer expired.  Further, the parties mediated the case twice—on April 8, 2011, and June 20, 2012.  Thereafter, the parties engaged in further settlement discussions, which led to the stipulated judgment.

Defendants argue that this was a simple matter that did not warrant much effort. They do not, however, cite to any specific hours or tasks that they believe were unnecessary, and in fact, the record shows that defendants' own billings were comparable to those of Swan's attorneys.  Defendants also argue that because there had initially been a second plaintiff, Marvin Swan, the requested fees must be cut in half for the period that Marvin Swan was still a party to the case.  Swan's attorneys, however, declared that the time spent solely on Marvin Swan's claims was minimal and was not included in the fee

motion. In any event, defendants have failed to identify any specific hours billed on behalf of Penny Swan that they believed was actually for work performed on behalf of Marvin Swan. "In challenging attorney fees as excessive . . . it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." (*Premier Medical Management Systems, Inc. v California Ins. Guarantee Ass'n* (2008) 163 Cal.App.4th 550, 564.) Defendants have failed to meet their burden of showing that the fees were excessive.[6]

### DISPOSITION

The judgment is affirmed. Respondent Penny Swan shall recover her costs on appeal.

_____
McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Jenkins, J.

---

[6]Defendants also assert that Swan was improperly awarded expert witness fees. They cite no legal authority or argument in support of this position that the award was prohibited. We therefore decline to address this issue. (*Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956 [a claim may be deemed waived when there is no authority cited in support of it].)

14