[Civ. No. 20180.   First Dist., Div. Two.   Apr. 16, 1962.]

L. H. PRICE et al., Plaintiffs and Appellants, v. TREE TOPPER TIMBER COMPANY, Defendant and Respondent.

Spurr & Brunner and W. H. Brunner for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

AGEE, J.—Plaintiffs (Coastwise) appeal from a money judgment in their favor and against defendant (Tree Topper) on the ground that two items sued for were disallowed and therefore not included in the amount of the judgment.

Coastwise held timber rights on nine separate tracts. About June 1, 1954, Coastwise and Tree Topper entered into an agreement as to these nine tracts which was thereafter reduced to writing about December 31, 1954. Under it Tree Topper agreed to pay Coastwise $8.00 per thousand board feet of timber cut and removed by it from the Blinn tract, with a minimum guarantee of four million feet, or $32,000.

On May 8, 1957, Coastwise filed this action against Tree Topper to recover money claimed to be due under the agreement. The judgment rendered after a nonjury trial allowed Coastwise a recovery of $1,914.77, that being the difference between the $32,000 minimum guarantee on the Blinn tract and the $30,085.23 paid thereon by Tree Topper; it also allowed Coastwise a recovery of $4,942.02 on the Maynes-Morris tract and $107.17 on the Dailey tract; a setoff of $847.66 on the Hargus tract and of $4,000 on the Stansberry tract was allowed to Tree Topper. A judgment of $2,116.30 in favor of Coastwise resulted from the foregoing figures, plus $650 attorney fees as provided for in the agreement.

The only contention raised by Coastwise on this appeal is that the trial court was required as a matter of law to find in its favor as to two items disallowed.

Item One is based on the allegation that Tree Topper harvested a total of 4,814,093 board feet of timber from the Blinn tract and that the excess over 4,000,000 board feet is chargeable against Tree Topper at $8.00 per thousand feet, or $6,512.74. The court found this allegation to be untrue.

Item Two is based on the allegation that, in breach of the written agreement, Tree Topper failed to harvest all merchantable saw or better timber on the Blinn tract and left unharvested thereon in excess of 1,200,000 board feet of such timber, thereby damaging Coastwise in the sum of $9,600. The court found this allegation to be untrue.

The record herein comes up on a partial transcript and contains only the testimony of Mrs. Blinn, the owner of the Blinn tract, and Claude M. Johns, Jr., one of the Tree Topper partners. Coastwise bases its claim as to Item One entirely upon the testimony of Mrs. Blinn, saying that she was unimpeached and that the trial court was required to find in

accordance therewith. The testimony of Johns is confined almost entirely to the issue raised by Item Two.

Mrs. Blinn testified that she wrote down on sheets of paper the footage shown on the scaler's tickets which accompanied each truckload as it left the tract; that these sheets showed a total removal of 4,548,752 board feet up to and including October 4, 1954; that from October 4, 1954, to May 4, 1955, an additional 265,341 board feet were removed. These sheets were not offered in evidence and are not included in the record.

Coastwise introduced in evidence numerous exhibits consisting largely of correspondence between it and Tree Topper. These exhibits show that detailed information was furnished to Coastwise by Tree Topper from time to time as to the dates and amounts of timber removed and the mills to which the same had been hauled. Plaintiff's exhibit 8-R in evidence appears to have been prepared by Coastwise after the logging operations of Tree Topper were over. The exhibit shows a total of 3,760,655 board feet logged by Tree Topper and payment of $30,085.23, leaving a balance due of $1,914.77 on the minimum of 4,000,000 board feet, or $32,000, as provided in the agreement. This balance was allowed by the trial court and included in the judgment.

Although the agreement provided that all logs were to be scaled "by such scalers that may be agreed upon between the parties," none of the scalers' records are included in the partial transcript.

It is evident that Tree Topper has consistently maintained that it removed 3,760,655 board feet of timber, and no more. Coastwise refers in its brief to the "witness Van Vleet" (one of the defendants) and the partial transcript shows that Van Buskirk (one of the plaintiffs) was called as a witness by Tree Topper under the provisions of section 2055 of the Code of Civil Procedure. The partial transcript also indicates that Mrs. Van Vleet (one of the defendants) appeared as a witness. We do not have the benefit of this testimony.

Coastwise contends that we should hold that the trial court arbitrarily and capriciously disregarded the "uncontradicted and unimpeached testimony of *Adah* Blinn." We refuse to do so.

The situation presented is one wherein we feel impelled to and do impose the sanction prescribed in rule 4(b) of the Rules on Appeal. This provides: "If the appellant, in his notice to the clerk, states the points to be raised by him

on the appeal, he may designate the portions of the oral proceedings to be transcribed, or direct the omission of any portions which he deems unnecessary, and in such event shall be *precluded* from presenting any grounds for reversal not embraced within the points stated by him, . . ." (emphasis ours).

In the instant case, Coastwise made no statement whatsoever of any points to be raised on the appeal. In *Calhoun* v. *Davis,* 121 Cal.App.2d 167 [262 P.2d 620], the plaintiff-respondent was credited with $8,157.67 for expenditures by him in the promotion and development of a certain motor car. Mr. Justice McComb, speaking for the court, stated: "Defendant has appealed on a partial transcript only and in his notice of appeal did not specifically set forth as a ground therefor any alleged error of the trial court in including in the judgment the $8,157.67. He has therefore waived his right to urge this contention on appeal since rule 4(b), Rules on Appeal, . . . is here applicable" (p. 171).

We likewise hold that the failure of Coastwise to comply with the aforesaid rule 4(b) precludes it from presenting its contention that the evidence is insufficient to support the trial court's finding as to Item One.

The contention of Coastwise as to Item Two is subject to the same disposition. ▉ Furthermore, the portion of the record which is available to us clearly shows that such contention is without merit.

The agreement provides that Tree Topper shall "exhaust the merchantable saw and better timber" on the Blinn tract *but* that: "In this connection, Tree Topper shall be the sole and exclusive judge of that which constitutes merchantable timber, . . ."

Johns testified that Tree Topper removed all of the merchantable or better timber as the same existed during the period of operations; that Coastwise had figured that there were 6,000,000 feet of such timber but that Tree Topper refused to accept this estimate and insisted on the 4,000,000 feet provided for in the agreement; he stated: "We didn't feel there was six million feet there, and refused to enter into an agreement based on six million feet, so we used four million feet"; that his company "didn't want to be bound by somebody else[']s definition of 'merchantable' "; that the Blinn timber was small and "limby"; that his company was desirous of obtaining logs and would have taken all that were merchantable; that the mills were taking 12-inch logs

at one time but later changed to a minimum of 16 inches and then to 22 inches.

As against this testimony, Coastwise relies entirely upon that of Mrs. Blinn. She testified that after Tree Topper's operations terminated in May, 1955, there was no more logging by anyone until 1959, when one McKee logged over one million feet therefrom. From this, Coastwise concludes that there must have been "merchantable saw and better timber" left standing in 1955.

There is no evidence as to the condition of the timber market in 1959 as compared with that in 1955. "Merchantable" timber means marketable timber. Coastwise does not claim that Tree Topper acted fraudulently or arbitrarily in acting as "the sole and exclusive judge of that which constitutes merchantable timber."

We conclude that the testimony of Johns, as summarized above, was sufficient to support the trial court's finding as to Item Two.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied May 15, 1962.