Filed 8/21/20  Movsesian v. Ourishian CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SEVAN MOVSESIAN, | B296836 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC615094) |
| v. | |
| LILIAN OURISHIAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County.  Victor E. Chavez, Judge.  Affirmed.

The Arkin Law Firm, Sharon J. Arkin; Law Offices of Robert Dourian, Robert Dourian and Z. Sondra Derderian; Doumanian & Associates and Nancy P. Doumanian for Plaintiff and Appellant

Mark R. Weiner & Associates, Kathryn Albarian and Michael Park for Defendants and Respondents.

———————————————

Appellant Sevan Movsesian sued Lilian Ourishian seeking compensation for injuries he suffered when Ourishian struck him with a car. The jury awarded Movsesian around $44,000 in damages, which was significantly less than he sought. The trial court subsequently denied Movsesian's motion for new trial and awarded Ourishian costs pursuant to Code of Civil Procedure section 998. Movsesian appealed.

For purposes of appeal, Movsesian designated a partial reporter's transcript of the proceedings below. He failed, however, to state the points he intended to raise on appeal, as required under rule 8.130(a)(2) of the California Rules of Court (Rule 8.130(a)(2)). The failure to state a point precludes a party from asserting it on appeal, unless the reviewing court permits otherwise.

Ourishian brought this deficiency to Movsesian's attention at least three times, the earliest being three days after he filed the notice of designation of record. Movsesian, however, addressed the issue for the first time in a motion filed concurrently with his reply brief, in which he urges us to exercise our discretion to overlook his failure to comply with Rule 8.130(a)(2). Because Movsesian's violation was egregious and inexcusable, we refuse to do so. Accordingly, we affirm the judgment and orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Ourishian struck Movsesian with her car while Movsesian was riding a bicycle. Movsesian filed a complaint against Ourishian, alleging he suffered a sacroiliac joint injury, which caused permanent chronic pain. This alleged injury was the basis for most of Movsesian's claimed damages.

2

Ourishian conceded liability, and the case proceeded to a jury trial to determine damages.  Ourishian read to the jury excepts from the deposition transcript of her expert, Dr. Robert Klapper, who opined that the collision did not cause Movsesian to suffer a sacroiliac joint injury.  He based that opinion, in part, on a radiologist's report that an MRI, taken more than a year after the collision, showed no pathology in the area (the MRI report).  According to Dr. Klapper, if there were a sacroiliac joint injury caused by the collision, it would have appeared on the MRI.

The jury returned a verdict for Movsesian in the amount of $44,458.45, consisting of $31,458.45 for past medical expenses and $13,000 for past noneconomic losses.  It awarded nothing for future economic losses, future lost earnings, and future noneconomic losses.

*Juror Misconduct*

Movsesian filed a motion for new trial on the basis that one of the jurors improperly inserted his own expert opinions into deliberations.  In support, Movsesian submitted a declaration from Juror No. 4, which recounted that Juror No. 9 "started [deliberations] by stating he worked at UCLA, in the fields of orthopedics.  He presented himself as an expert in the medical field and spoke about his knowledge and experience on matters presented during trial.  [Juror No. 9] injected his own medical opinions."  Juror No. 4 did not provide any further details.

Movsesian also submitted declarations from two of his attorneys, who spoke with Juror No. 9 and several other jurors shortly after the trial.  According to the attorneys, Juror No. 9 admitted making specific comments during deliberations based on his personal experiences, including as an emergency room

3

nurse. Movsesian argued the comments expressed improper expert opinions and constituted misconduct.

The trial court rejected Movsesian's claim of juror misconduct. In doing so, it declined to consider the declarations from his attorneys, which it noted contained inadmissible hearsay. The court concluded the declaration from Juror No. 4 was not sufficient to establish misconduct because the juror did "not identify any statements, e.g., specific medical opinions made by [Juror No. 9] that are tethered to a specific issue in the case, that would be an 'overt act' of misconduct."

*Admission of Deposition Testimony*

Movsesian also argued in his motion for new trial that the court improperly admitted Dr. Klapper's deposition testimony, rather than requiring he testify in person. Ourishian responded that it was necessary to read from the deposition because Dr. Klapper's surgery schedule presented a conflict with trial, and Movsesian refused to allow him to testify out of order.

The trial court rejected Movsesian's arguments, finding the reading of the deposition was proper under Code of Civil Procedure section 2025.620, subdivision (c)(3).[1] That provision allows a party to use for any purpose the deposition of a witness if the court finds "[e]xceptional circumstances exist that make it desirable to allow the use of any deposition in the interests of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court." (§ 2025.620, subd. (c)(3).) The court explained that the "refusal to stipulate to Dr. Klapper's appearance out-of-order created an exceptional circumstance for allowing Dr. Klapper's deposition testimony to

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

be read into the record because, otherwise, the Defendant would . . . not have had expert testimony on the Plaintiff's medical condition and damages. In these circumstances, it was desirable to allow the use of Dr. Klapper's deposition in the interests of justice."

*Costs Award*

After trial, each party filed a memorandum of costs, and each responded by filing motions to tax or strike the other party's memorandum. The primary dispute was whether Ourishian made valid section 998 offers, thereby shifting the liability for costs.

Ourishian made her first section 998 offer in February 2018. The offer was for $50,000 and provided as follows:

> "Defendant[] Lilian Ourishian . . . offer[s] to settle this matter with plaintiff Sevan Movsesian pursuant to Section 998 of the Code of Civil Procedure for the sum of $50,000.00, to be paid by draft issued to Sevan Movsesian, Kaiser Permanente and Law Offices of Robert Dourian, in exchange for a dismissal with prejudice of the complaint against offering defendant(s), each party to bear their own costs and attorney's fees."

Movsesian did not accept the offer.

In October 2018, Ourishian made a second section 998 offer, this time for $80,000. Once again, Movsesian did not accept the offer.

In opposing Ourishian's request for costs, Movsesian argued the offers were unreasonable and made in bad faith, the February offer was too uncertain, and the October offer extinguished and superseded the February offer. The court

5

rejected each argument and awarded Ourishian $54,617.42 in costs, dating back to the February offer.

Movsesian timely appealed the judgment, the order denying motion for new trial, and the order awarding costs.

## DISCUSSION

### I. Movsesian's Failure to Comply with Rule 8.130(a)(2) Precludes Him From Raising Any Points on Appeal

Ourishian contends Movsesian is precluded from asserting each point he raises on appeal given his failure to comply with Rule 8.130(a)(2). We agree.

#### A. Background

On April 15, 2019, Movsesian filed a form notice designating record on appeal, in which he requested only a single pre-trial hearing be included in the reporter's transcript. A subsequent section of the form directs that if the "designated proceedings DO NOT include all of the testimony, state the points that you intend to raise on appeal." It cites Rule 8.130(a)(2) and notes "your appeal will be limited to these points unless, on motion, the reviewing court permits otherwise." Movsesian left this section blank.

Three days later, Ourishian filed in the trial court an objection to the notice on the basis that it failed to comply with Rule 8.130(a)(2). Ourishian served the objection on Robert Dourian, that is the attorney that signed the notice of designation.

About four months later, on August 23, 2019, Sharon Arkin associated in as lead appellate counsel for Movsesian. Dourian continues to represent Movsesian on appeal as well.

On December 2, 2019, three days before Movsesian's opening brief was due, Arkin sent an email to Ourishian's counsel

6

asking that she stipulate to augmenting the record to include the full reporter's transcript because "the entire transcript is necessary in order to demonstrate prejudice." Ourishian's counsel declined to stipulate and referred Arkin to her prior objection related to the failure to comply with Rule 8.130(a)(2).

Later that day, Arkin filed in this court a motion to augment the record to include the entire reporter's transcript, or alternatively, transcripts for several proceedings that could be prepared before the opening brief was due. The request asserts the "entire transcript is necessary to demonstrate the trial court's abuse of discretion and resulting prejudice from its denial of the motion for new trial." This court denied the request with respect to the entire reporter's transcript, but granted the request as to those proceedings that could be prepared quickly. Movsesian filed the augmented reporter's transcript the same day he filed his opening brief.

Ourishian filed her respondent's brief on February 19, 2020. In it, she urges us to decline to consider the points raised in Movsesian's opening brief given his failure to state those points in his notice designating record, as required under Rule 8.130(a)(2).

Movsesian filed his reply brief about three months later, on May 20, 2020. The same day, he filed a motion urging us to overlook his failure to comply with Rule 8.130(a)(2). According to Movsesian, his failure to comply with the rule was the result of inadvertent error as well as Ourishian's failure to serve the April 19, 2019 objection on all of his counsel. He also contends the issues raised in his opening brief can be decided on the record provided.

According to declarations attached to the motion, although the notice designating record was signed by attorney Robert Dourian, one of Movsesian's other attorneys from a different firm, Nancy Doumanian, prepared it. Doumanian mistakenly overlooked the section requiring she identify all points to be raised on appeal.

Dourian did not deny receiving Ourishian's objection to the notice designating record, but explained he did not "adequately understand or appreciate the technical deficiency." He also assumed Doumanian would take care of it, since she had been tasked with all work necessary to move the appeal forward. Doumanian, however, had not been served with the objection, and therefore did not know about the issue until she received the respondent's brief.

**B. Analysis**

Rule 8.130(a)(2) states: "If the appellant designates less than all the testimony [in the notice designating reporter's transcript], the notice must state the points to be raised on appeal; the appeal is then limited to those points unless, on motion, the reviewing court permits otherwise." Enforcement of Rule 8.130(a)(2) does not undermine the policy of deciding appeals on their merits. (*Aspen Grove Condominium Assn. v. CNL Income Northstar LLC* (2014) 231 Cal.App.4th 53, 60 (*Aspen*).)

Here, Movsesian designated a partial reporter's transcript that did not include all the testimony given in the trial court, but he failed to state in the notice any points to be raised on appeal. As Movsesian concedes, under the plain language of Rule 8.130(a)(2), he is precluded from raising any points on appeal, unless we permit otherwise. We decline to do so.

8

Movsesian's failure to comply with Rule 8.130(a)(2) was egregious and inexcusable. Ourishian's objection brought the issue to his attention more than a year ago, and only a few days after he filed the deficient designation of record. Movsesian's excuses for not addressing the issue then—that the attorney who received the objection did not understand the significance of the issue and just assumed another attorney would take care of it—are far from compelling. Indeed, they strain credulity.

Even if the claims are true, Movsesian nonetheless fails to explain why his lead appellate counsel, Arkin, did not address the issue immediately after it was brought to her attention in December 2019. Nor does he explain why, after the issue was raised for the third time in the respondent's brief, he waited three additional months to finally address it.

Movsesian is also wrong to claim the issues raised on appeal can be fully resolved on the designated record. As discussed more fully in the next section, we agree with his previous representation to this court that the "entire transcript is necessary to demonstrate the trial court's abuse of discretion and resulting prejudice from its denial of the motion for new trial." Moreover, despite challenging rulings related to claims of juror misconduct, the admission of deposition testimony, and an award of costs, Movsesian failed to designate a single transcript evidencing any substantive discussion of those issues. His failure to do so significantly limits our ability to review the issues.

For these reasons, we decline to exercise our discretion to overlook Movsesian's complete failure to comply with Rule 8.130(a)(2). Movsesian, therefore, is precluded from raising any points on appeal. (See *Price v. Tree Topper Timber Co.* (1962) 202 Cal.App.2d 412, 415 [appellant's failure to identify any points on

appeal waived all issues under predecessor to Rule 8.130(a)(2)];
see also *Aspen, supra*, 231 Cal.App.4th at p. 60 [declining to
consider issues raised in appellant's opening brief that were not
identified in the designation of record]; *McDaniel v. Dowell* (1962)
210 Cal.App.2d 26, 30 [same].)  As a result, he cannot meet his
burden of showing error, and we must affirm the trial court's
judgment and orders.

## II.    Movsesian's Arguments Lack Merit

Even if we were to overlook Movsesian's complete failure to
comply with Rule 8.130(a)(2), we would reject each of his
arguments on the merits.

### A.  Movsesian Has Not Shown Juror Misconduct

The trial court did not err in refusing to grant a new trial
based on juror misconduct.  The attorney declarations submitted
in support of the motion contained hearsay statements by Juror
No. 9, and the trial court properly excluded them on that basis.[2]
(See *Burns v. 20th Century Ins. Co.* (1992) 9 Cal.App.4th 1666,
1670 [declarations by investigator concerning purported
statements by two jurors during deliberations were inadmissible
hearsay]; *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1468
["a trial court does not abuse its discretion in denying a motion
for new trial based upon juror misconduct when the evidence in
support constitutes unsworn hearsay"].)  Without the attorney
declarations, the only evidence supporting Movsesian's claim is

---

[2]    Movsesian is simply wrong when he claims the attorney
declarations do not contain hearsay.  The declarations relay that
Juror No. 9 admitted making certain comments during
deliberations, and Movsesian offered the declarations to prove
that Juror No. 9 actually made those comments during
deliberations.  This is hearsay.  (See Evid. Code, § 1200,
subd. (a).)

10

the declaration of Juror No. 4.  That declaration is far too vague and conclusory to support a finding of juror misconduct. (*Cf. People v. Cook* (2015) 236 Cal.App.4th 341, 345 [vague or conclusory allegations of juror misconduct are not sufficient to create a reasonable belief that juror misconduct occurred]; *People v. Rhodes* (1989) 212 Cal.App.3d 541, 554 [affidavit was "too vague and conclusionary to constitute an adequate preliminary showing of juror misconduct"].)

We reject Movsesian's contentions that the trial court should have admitted the attorney declarations under various exceptions to the hearsay rule.  There is nothing in the record showing he made these arguments below, which forfeits them on appeal.[3]  (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282–283 [to preserve a claim that evidence was admissible under a hearsay exception, "the proponent has to have alerted the trial court to the exception relied upon and borne the burden below of laying the proper foundation"]; *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 170 [appellant forfeited hearsay exception argument by failing to raise it in the trial court].)

---

[3]  Movsesian insists he did not have an opportunity to address the hearsay issue below because Ourishian did not raise it in her opposition to the motion for new trial.  Because Movsesian did not provide any record of the hearing on his motion for new trial, we may presume the hearsay issue was raised at that hearing and the trial court allowed him to address it.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*); *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–188 (*Foust*).)

Regardless, Movsesian has not shown the hearsay statements were admissible as declarations against interest (Evid. Code, § 1230), excited utterances (Evid. Code, § 1240), contemporaneous declarations explaining conduct (Evid. Code, § 1241), or statements of mental or physical state (Evid. Code, § 1250). Contrary to his claims, the comments did not subject Juror No. 9 to contempt (see § 1209),[4] were not made spontaneously while under the stress of excitement caused by a perception, were not made while Juror No. 9 was engaged in the relevant conduct, and did not reflect the juror's state of mind, emotion, or physical sensation. To the extent Movsesian makes other claims in his reply brief, they are untimely and we decline to consider them. (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765.)

## B. The Trial Court Did Not Err In Permitting Dr. Klapper's Deposition Be Read to the Jury

Movsesian contends the trial court abused its discretion to the extent it found Dr. Klapper's deposition testimony admissible under section 2025.620, subdivision (d), or Evidence Code section 1291. He overlooks, however, that the trial court did not find the

---

[4] In passing, Movsesian suggests Juror No. 9 admitted consulting an outside orthopedic doctor to bolster his own expert opinions. If true, such action might qualify as contempt under section 1209, subdivision (a)(6), which forbids outside communication or research about the case. However, we do not agree with Movsesian that Juror No. 9 made such an admission. According to one of the attorney declarations, Juror No. 9 said he "spoke to one of the ortho[pedic doctors]." The juror did not say when he spoke to the doctor or what they discussed. It is therefore pure speculation to conclude Juror No. 9 discussed issues in the case with the doctor.

deposition admissible under either provision; instead, it found it admissible under section 2025.620, subdivision (c)(3). Movsesian's arguments related to that code section, made for the first time in his reply brief, are untimely, and we may disregard them on that basis. (See *Reichardt v. Hoffman, supra*, 52 Cal.App.4th at pp. 764–765.) The appellate record also does not show Movsesian raised the arguments below, which forfeits them on appeal. (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 15 [" 'As a general rule, issues not properly raised at trial will not be considered on appeal.' "]; *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 897 [appellate courts ignore arguments not presented and litigated in the trial court].)

We also reject Movsesian's contention that Dr. Klapper's references to the MRI report improperly related inadmissible hearsay, in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). When Movsesian raised the objection in a motion in limine, Ourishian represented that she intended to introduce the MRI report into evidence. Because Movsesian failed to provide a complete record of the trial, we may presume she did so successfully. (See *Denham, supra*, 2 Cal.3d at p. 564; *Foust, supra*, 198 Cal.App.4th at pp. 186–188.) Regardless, Movsesian's own treating physician testified that he reviewed the MRI and agreed with the findings in the MRI report. Dr. Klapper's references to the contents of the report, therefore, did not run afoul of *Sanchez*. (See *Sanchez, supra*, 63 Cal.4th at p. 686 [an expert may relate as true case-specific facts asserted in hearsay statements if "they are independently proven by competent evidence or are covered by a hearsay exception"].) Dr. Klapper was also free to base his opinions on the MRI report and express

those opinions to the jury, regardless of whether the report contained inadmissible hearsay. (*Id*. at pp. 685–686 [an "expert may still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so"].)

Even if the admission of Dr. Klapper's deposition testimony were error, reversal would not be warranted. The erroneous admission of evidence is reversible only if it resulted in a miscarriage of justice. (Evid. Code, § 353; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282.) We cannot make that determination, however, given Movsesian failed to designate a complete record of the trial. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [to determine whether there was a miscarriage of justice, the reviewing court must examine the entire cause, including the evidence].)

## C. The Court Properly Awarded Costs Based on the February Section 998 Offer

Movsesian posits various reasons why the trial court erred in awarding costs to Ourishian pursuant to the February section 998 settlement offer. None of his arguments has merit.

### 1. The February Offer Was Not Superseded and Extinguished

Contrary to Movsesian's claims, Ourishian's February offer was not superseded and extinguished by her October offer. In *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014 (*Martinez*)**,** the California Supreme Court held where a "plaintiff serves two unaccepted and unrevoked statutory offers, and the defendant fails to obtain a judgment more favorable than either offer, the trial court retains discretion to order payment of expert witness costs incurred from the date of the first offer." (*Id*. at p. 1026.) Here, Ourishian made multiple offers to settle, and

14

Movsesian failed to obtain a judgment more favorable than either of them.  Under *Martinez*, the trial court had discretion to order payment of costs incurred from the date of the first offer.

*Distefano v. Hall* (1968) 263 Cal.App.2d 380 (*Distefano*), is distinguishable.  In that case, the offeree obtained a judgment less favorable than the first settlement offer, but more favorable than the second settlement offer.  (*Distefano*, at pp. 383–384.)  Here, in contrast, Movsesian obtained a judgment less favorable than both section 998 offers.  For that reason, *Martinez* controls.  Indeed, *Martinez* distinguishes *Distefano* on this very basis.  (*Martinez, supra*, 56 Cal.4th at pp. 1025–1026.)

**2. The February Offer Was Reasonable and Made in Good Faith**

There is no merit to Movsesian's contention that the February offer was not a reasonable, good faith offer.  To decide the issue, we consider two factors:  (1) whether the offer was within the range of reasonably possible results at trial; and (2) whether the offeror's information was known, or should have been known, by the offeree.  (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699.)  "[W]hether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court."  (*Id.* at p. 700.)

As to the first factor, Movsesian points to nothing in the record showing that, as of February 2018, $50,000 was not within the range of reasonably possible results at trial.  (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924 [reasonableness is based on the circumstances when the offer was made].)  The fact that the offer exceeded the jury verdict is prima facie evidence that it was.  (*Id.* at p. 926; see *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 629.)  Movsesian

suggests the verdict does not accurately reflect the value of the case because it was tainted by inadmissible testimony from Dr. Klapper and juror misconduct. We have already rejected his arguments on these issues, and we reject them again for the same reasons.

Movsesian does not meaningfully contest the second factor; nor could he. Nothing in the record even suggests Ourishian possessed information unknown to Movsesian when the offer was made. Indeed, she represented that the offer was based on a Kaiser lien for medical services totaling around $30,000, which was provided to her by Movsesian. The trial court did not abuse its discretion in finding the offer was reasonable and made in good faith.

### 3. The February Offer Was Not Defective on Its Face

Movsesian contends the term in the February offer requiring the $50,000 be "paid by draft issued to Sevan Movsesian, Kaiser Permanente and Law Offices of Robert Dourian" rendered the offer defective on its face.[5] We disagree.

Contrary to Movsesian's claims, the term did not make the offer contingent upon acceptance by non-parties. (See *Meissner v. Paulson* (1989) 212 Cal.App.3d 785, 791 ["only an offer made to a single plaintiff, without need for allocation or acceptance by other plaintiffs, qualifies as a valid offer under section 998."]) The offer was made to Movsesian alone. Although it required Kaiser Permanente (Kaiser) and counsel be named as payees on the

---

[5] Presumably, Kaiser Permanente and counsel were named payees because they had claims to any recovery by Movsesian. Kaiser Permanente paid for or provided Movsesian's medical care, and it had a lien over any settlement or judgment. Counsel had a contingency fee arraignment with Movsesian.

16

draft, it did not give either any additional authority to accept or reject it. The offer also was not invalid for failing to specify how much of the $50,000 was owed to Kaiser and counsel to satisfy their respective claims to the settlement. (See *Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362, 374 [term specifying the offeree was " 'responsible for all medical expenses/liens' " did not invalidate a section 998 offer].)

There is also no merit to Movsesian's contention that the term imposed an additional condition that was incapable of precise valuation. According to Movsesian, the term negatively impacted his ability to negotiate how much of the settlement was owed to counsel and Kaiser, and gave counsel and Kaiser the power to withhold their endorsements unless he agreed to their own terms and conditions. Such consequences, Movsesian suggests, impacted the value of the settlement offer, but did so in a way that he could not calculate with precision. (See *Berg v. Darden* (2004) 120 Cal.App.4th 721, 727 [the offeree must be able to clearly evaluate the worth of the offer].)

Movsesian wrongly assumes that, if Kaiser and his counsel were not payees, he would have received the settlement funds directly, without first having to negotiate the amounts owed to each. In practice, no matter who was named on the draft, it likely would have been given directly to Movsesian's counsel. Counsel, in turn, would have had the authority to withhold any disputed funds until Movsesian resolved the outstanding claims. (See, e.g., *Fletcher v. Davis* (2004) 33 Cal.4th 61, 69 [when settlement proceeds have been deposited in the client's trust account, the attorney may withhold an amount equivalent to the portion disputed under a charging lien].) Counsel almost certainly would have exercised that authority; otherwise, he

17

would have risked extinguishing his entitlement to the funds and exposing himself to personal liability to Kaiser. (See *Kaiser Foundation Health Plan, Inc. v. Aguiluz* (1996) 47 Cal.App.4th 302, 307 disapproved of on other grounds by *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754 [attorney was liable for settlement proceeds disbursed to his client in knowing disregard of a health care provider's lien]; see also *Fletcher v. Davis, supra*, 33 Cal.4th at p. 69, fn. 2 [to protect a charging lien, an attorney must refuse to endorse a settlement draft jointly payable to the attorney and client].) If the parties could not resolve their disputes informally, counsel could have commenced an interpleader action to formally resolve the competing claims to the funds. (See § 386, subd. (b); *Hood v. Gonzales* (2019) 43 Cal.App.5th 57 [attorney filed interpleader action to resolve client's and lienholders' competing claims to settlement funds]; Cal. Prac. Guide Prof. Resp. Ch. 9-F, § 9:340 [faced with conflicting demands by a client and a lienholder, an attorney may commence an interpleader action].) In that case, Movsesian would not have received any disputed funds until after the interpleader action was resolved, either through settlement or a judicial determination.

Although the above procedures would affect only "disputed" funds, the record suggests Movsesian's counsel and Kaiser could have made claims to the entire settlement payment. In opposition to Ourishian's request for costs, for example, Movsesian represented that when the settlement offer was made, he had already incurred $48,300 in medical bills and $6,557 in litigation costs. This was in addition to any amounts owed to his attorney under the contingency fee agreement. It is unlikely, therefore, Movsesian would have received any portion of the

18

settlement before negotiating those claims, even if he were the sole payee on the settlement draft. As a result, he would have been in essentially the same position as if he, counsel, and Kaiser were jointly named as payees. Considering these circumstances, we do not agree with Movsesian that the term naming counsel and Kaiser as payees impacted the value of the offer in a meaningful way. The February offer was not defective on its face.[6]

## DISPOSITION

The judgment and orders are affirmed. Respondents are awarded costs on appeal.

BIGELOW, P. J.

We Concur:

STRATTON, J.

WILEY, J.

---

[6] Because we reject Movsesian's arguments related to the February offer, there is no reason to consider his arguments related to the October offer.

19